**LADD et al. v. BRICKLEY et al.**

**No. 4167.**

Circuit Court of Appeals, First Circuit.

**Nov. 14, 1946.**

Writ of Certiorari Denied Feb. 10, 1947.

See 67 S.Ct. 675.

Before MAHONEY, GOODRICH (by special assignment), and WOODBURY, Circuit Judges.

Howell Van Auken, of Detroit, Mich., for appellants.

B. A. Brickley and Frank B. Wallis, both of Boston, Mass. (Samuel Hoar and Edward R. Langenbach, both of Boston, Mass., on the brief), for Brickley, trustee, appellee.

Morton E. Yohalem, Counsel, Public Utilities Division (Roger S. Foster, Sol., Robert S. Rubin, Asst. Sol., Alexander Cohen, Atty., and Robert F. Krause, Public Utilities Division, all of Philadelphia, Pa., on the brief), for Securities and Exchange Commission, appellee.

John L. Hall, of Boston (John W. Davis, of New York City, Richard Wait, of Boston, Ralph M. Carson, of New York City, Choate, Hall & Stewart, of Boston, Mass., and Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City, on the brief), for International Paper Co., appellee.

Joseph Nemerov, of New York City, for Ethel Kresberg and others, appellees.

Archibald Palmer, of New York City, and Friedman, Atherton, King & Turner, of Boston, Mass. (Bennett E. Aron, of Brooklyn, N. Y., on the brief), for Mildred Howard, appellee.

GOODRICH, Circuit Judge.

This appeal from the judgment of the District Court for the District of Massachusetts brings before us the propriety of that court's approval of a settlement in an important matter of corporate reorganization.

The affairs of International Hydro-Electric System (hereinafter called Hydro) are involved. This company is a holding company and its reorganization under the Public Utility Holding Company Act of 1935 [1] is in the District Court.

Hydro was formed by a predecessor of International Paper Company (hereinafter

---

[1] 49 Stat. 838, Aug. 26, 1935, 15 U.S.C.A. 2C, § 79 et seq.

called Paper Company).[2] To simplify reference to the corporate relationships we shall speak of Paper Company as though it had been in continuous existence while the acts complained of arose. The legal significance of this assumption will be subjected to analysis later. A charge that International Paper Company had improperly manipulated Hydro to its own use and to the loss of Hydro's security holders was made with such force that the District Court appointed a member of the Massachusetts Bar, Bartholomew A. Brickley, Esq., to make an investigation. Subsequently, Mr. Brickley became Trustee in the reorganization proceedings. With the help of the Securities and Exchange Commission (hereinafter called S.E.C.) a thorough investigation was made. The conclusion reached by the Trustee was that enough facts had been uncovered to call for the institution of legal proceedings against the Paper Company. Suit was started in the Massachusetts State Court; also in the United States District Court for the District of Massachusetts. Before these actions came to trial on the merits, long negotiations were had between the parties looking to settlement. The Paper Company's original offer of $500,000 was, in the course of subsequent negotiations, eventually increased to $10,000,000 plus the agreement of Paper Company to lend one of Hydro's companies $3,000,000. This was subject to the provision that a clearing agreement be had with the Bureau of Internal Revenue with regard to Paper Company's income and excess profits tax liability for the money thus paid out. This clearance was subsequently obtained and the money paid into court. The District Judge has approved the settlement; so has the S.E.C. and the majority of those interested in the company. A group of junior security holders, however, are not satisfied with the amount obtained and bring this appeal alleging an error in the approval of the settlement above described. They figure that potential claims of the plaintiff in the actions total $131,859,059.56. They say that a settlement for only 7½% of this amount is not the kind of settlement which the court in the exercise of discretion can properly approve.

There are two main points on this appeal. The first one has to do with the form in which the District Court's conclusion appears. There were no formal findings of fact and conclusions of law. The decree recited: "That the court hereby determines that the compromise provided for in that certain agreement * * * be-

[2] Diagram of Corporate Relations.

## DIAGRAM OF CORPORATE RELATIONS

READ UP

tween Bartholomew A. Brickley, solely as he is trustee of International Hydro Electro System * * * and International Paper Company * * * is for the best interests of the estate of said System, that the consideration payable thereunder to said System is fair, reasonable, and adequate and that adequate notice and opportunity to be heard has been given to all persons interested, and the court hereby approves said agreement * * *." It concluded with specific directions for the execution of the agreement.

The appellants say that this is insufficient. They prefer to have the Court of Appeals make its own findings of fact, but in lieu of that say the case must go back to the District Court for findings.

Aside from this argument on the procedural point, they say that the amount paid in settlement, although it may seem a lot of money to a judge, is so disproportionate to the amount which Hydro is entitled to recover against Paper Company that the approval of the settlement was an abuse of discretion on the part of the District Judge. This last argument is coupled with a group of minor arguments such as: The fact that the District Judge did not take as long to consider the case as the appellants now think he should have taken;[3] and the fact that according to the appellants the District Judge relied on the Master and the S.E.C. recommendation instead of using his own head. We do not intend to take up these minor points individually because we think this whole litigation turns on the main question of whether it was within the discretion of the District Judge to approve the settlement proposed.

To this end we shall consider some of the points which both Paper Company and the Trustee have brought up as indicating the lines of defense which the Paper Company would have brought forward, had the actions brought by the Trustee against the Paper Company been pursued. We shall

not, of course, commit ourselves to an answer on the merits of these defenses. It will be enough if it appears that they have the ring of reality about them. Nor will we labor the point, since its truth is obvious, that a defendant only has to make good on one defense to win a lawsuit.

### General Considerations in Approval of Settlement.

There are two or three circumstances not involved in the individual defense which should be mentioned. Before the Massachusetts actions were brought by Mr. Brickley there had been some legal advice on the question of Paper Company's liability to Hydro. This question had been raised by a security holder named Todd who had become a Director of Hydro some time after the acts complained of had taken place. Two opinions were rendered. Each opinion advised against bringing an action on the basis that a successful recovery could not be reasonably anticipated. The opinions were signed, respectively, by the firm of Ropes, Gray, Best, Coolidge & Rugg and Robert G. Dodge, Esq. The authority carried by a document bearing the name of either of these signers is too well recognized to require elaboration in this opinion. Mr. Brickley had the benefit of seeing these memoranda. It was only after several months of investigation of the facts, assisted by the S.E.C., the advantage of which the signers of these opinions did not have, that Mr. Brickley concluded and reported to the Court that he thought that discovered facts were sufficient to justify legal proceedings against Paper Company. The Trustee still thinks, however, and we agree, that the opinions thus rendered by eminent counsel to the effect that the establishment of liability was improbable may properly be considered as one of the elements on a very practical matter of the settlement of a disputed claim.

Another general element to be considered on the question of acceptability of a

---

[3] Note, however, that on October 11, 1943, Judge Ford, of the United States District Court for the District of Massachusetts, appointed Mr. Brickley as special counsel for investigation of Hydro's claims against its parent companies; and on November 13, 1944, after receiving Mr. Brickley's report, Judge Ford appointed him as trustee of Hydro with orders to commence a lawsuit against the parent companies. Judge Ford had "lived with" this set of facts for over two years prior to authorizing an agreement to compromise.

settlement is the attitude of the people who were financially interested in the affairs of the company. Hydro during its corporate life had issued securities which consisted of (1) debentures; (2) preferred stock; (3) A stock; (4) B stock; and (5) common stock. Some of the preferred stock has been retired.[4] The B stock and the common stock were sold to Paper Company's parents in 1929 for $10,000,000 cash and over $19,000,000 of stock and assigned claims. This stock has been washed up in the financial reorganization, brought about by the S.E.C., and the entire issues of B and common stock were cancelled for the nominal consideration of $1.00.[5] Facts presented to the court reveal the following mathematical classification of the disapproving security holders:

(1) 0.2% of the debenture holders (owning 9.3% of all debentures) disapprove.

(2) 6% of the preferred stockholders (owning 29% of that stock) disapprove.

(3) 9% of the class A stockholders (owning 19% of that stock) disapprove.

These objections were registered by counsel and by reply postcards, that had been mailed along with a letter of protest of the settlement by Todd to all security holders, after Brickley had given official notice of the hearing for approval of the settlement. Todd held 31% of all the class A stock owned by the dissenting A stockholders. The overwhelming majority of the security holders in this enterprise either approve of, or at least do not disapprove of, the settlement.[6]

█ It is to be noted, also, that the vigorous opposition to the settlement comes from the holders of A stock, although there, too, the opposition comes from a minority of about 19% of the total number of shares. We do not know how well off the debenture holders will be if $10,000,000 is added to Hydro's assets. It is clear, of course, that they will benefit before the A stockholders do. It is equally clear that, to the extent that the A stockholders can embark the corporate enterprise on long and expensive litigation, they will have a run for other people's money, the result of which, if rosy hopes are realized, will be a profit to them. But the risk will be on the holders of the senior securities. This element, like the majority vote in favor of settlement, is not conclusive, but is one of the items which may be properly considered.

█ The third general point worth consideration is this; The staff of the S.E.C. has spent a very great deal of time in investigating the affairs of Hydro as part of its public function.[7] At the hearing before this Court the Commission unqualifiedly endorsed approval of the settlement. No court worth its salt will willingly make itself a rubber stamp for approving administrative Commission action. But the studied conclusion of an expert body which has made a prolonged investigation of a subject from the standpoint of the public interest is to be taken seriously. The affirmative recommendation of the Commission is therefore an element to be considered in assessing the wisdom of the settlement.

---

[4] From May, 1930 to April, 1941, 144,799 shares of preferred stock had been issued. In August, 1930, Hydro repurchased 2,000 shares of the preferred stock issue.

[5] Trustees of Hydro executed cancellation order of the S.E.C. (8 SEC 485 (1941)) on August 8, 1941.

[6] This court directs attention to the fact that persons holding Hydro securities either had knowledge or means of knowledge of the examination of the financial structure of Hydro and attempts to improve its stability and usefulness. Various proceedings had been taking place before the S.E.C. ever since June 17, 1940 for this purpose.

[7] As early as June 17, 1940, the S.E.C. had investigated Hydro's corporate structure and caused the cancellation of the class B and common stock, mentioned supra. Hearings were continued, and on July 21, 1942, the S.E.C. ordered Hydro to liquidate and dissolve. Todd contested this order. The order was upheld in Todd v. Securities and Exchange Commission, 6 Cir., 1943, 139 F.2d 700. On August 12, 1943, S.E.C. instituted action, out of which this appeal grows, in the United States District Court because Hydro asserted that it could not comply with the S.E.C. order without assistance by the court.

Points of Defense Alleged to Be Available to Paper Company.

1. Is there Personal Jurisdiction Over Defendant? It will be remembered that the Trustee has started two lawsuits against Paper Company in Massachusetts, one in the State Court[8] and one in the Federal Court.[9] Paper Company says it is not in court in those actions. The Superior Court Judge in the state suit decided against Paper Company on this point, but evidently impressed with the importance of the question involved, reserved the case for report to the Massachusetts Supreme Judicial Court. At this time there is no information regarding the report. The District Court, in the suit of Hydro against Paper Company withheld its decision pending a decision of the Massachusetts Supreme Judicial Court upon this problem of personal jurisdiction.

The question arises in this wise: Paper Company, subsequent to the 1929 and 1932 acts complained of by Hydro and prior to the running of the Statute of Limitations, was undoubtedly engaged in business in Massachusetts. Pursuant to a Massachusetts statute,[10] it designated an agent upon whom process in actions against it could be served. Before the lawsuits against it began Paper Company had withdrawn from local business in Massachusetts and revoked the authority of this agent.

Assume, for the moment, that Paper Company is no longer carrying on any activities in Massachusetts. Can it be held subject to suit in that State on a claim which arose before the authority of the agent to receive process was revoked?

It is settled that a state may make provision for suit in its courts against a foreign corporation which once did business there, but which has now ceased to do so.[11] This statement of power of a state, however, is usually, perhaps always, coupled with the proviso that the claim sought to be sued on arose out of the business done by the corporation in that state.[12] Can a state subject a corporation to suit after it has ceased to do business in a state for a claim not arising out of the business done there? In the first instance, the answer to such a question is a matter of local law, here Massachusetts. If Massachusetts says that its statute does not cover such a set of facts the corporation does not need to invoke anything more than the statute and the Massachusetts court's interpretation thereof to hold it not amenable to such a suit in that State. There is Massachusetts authority which looks in that direction with regard to the set of facts similar to those involved here.[13] The matter is not, however, one finally to be determined by Massachusetts law. There is the further question of what limitations the United States Supreme Court will impose to limit the scope of state court action against a foreign corporation under the circumstances here involved. And, here, there is authority from that Court which gives support to a limitation of the state's power to suits on claims arising out of the business which was done

[8] Commonwealth of Massachusetts Superior Court, in Equity No. 56916.

[9] District Court of the United States for the District of Massachusetts, Civil Action No. 3280.

[10] Mass.G.L.(Ter.Ed.) c. 181, § 3. "Commissioner to be appointed attorney for service of process. Every foreign corporation, which has a usual place of business in this commonwealth, * * * shall before doing business in this commonwealth, in writing appoint the commissioner and his successor in office to be its true and lawful attorney upon whom all lawful processes in any action or proceeding against it may be served, and in such writing shall agree that any lawful process against it which is served on said attorney shall be of the same legal force and validity as if served on the corporation, and that the authority shall continue in force so long as any liability remains outstanding against the corporation in this commonwealth. * * *"

[11] State of Washington v. Superior Court, 1933, 289 U.S. 361, 53 S.Ct. 624, 77 L.Ed. 1256, 89 A.L.R. 653.

[12] Restatement, Conflict of Laws (1934) § 93; Restatement, Judgments (1942) § 30, comment d.

[13] See Tucker v. Columbian National Life Ins. Co., 1919, 232 Mass. 224, 228, 122 N.E. 285, 286.

by the corporation in the state in question.[14]

Did these claims by Hydro against Paper Company arise out of the Paper Company's activity in Massachusetts? That is, at least in part, a question of fact and we have had no trial on the facts. Hydro started its life as a Massachusetts business trust. Therefore, perhaps one can say that any loss suffered by the business entity, as distinguished from the loss of individual security holders, was suffered there. But the inter-relations of Hydro and the Paper Company were not confined to Massachusetts transactions. Indeed the properties which Hydro complains that Paper Company sold to it at inflated values were scattered around through New England and down into New York. It is a very difficult question to try to decide whether Hydro's complaint is based on transactions arising out of the Paper Company's Massachusetts activities.

Paper Company has ceased to do local business in Massachusetts. It does have representatives there who solicit offers from Massachusetts prospects looking to transactions which are completed by the shipment of goods in interstate commerce. The Massachusetts court has said that such solicitations is not such doing of business in Massachusetts as to make a foreign corporation subject to suit there.[15] We now know that systematic canvassing by traveling salesmen who solicit offers for interstate sales can constitutionally subject the employing company to liability for a state's unemployment compensation fund.[16] That is not the same thing as saying that a lawsuit may be pursued against the foreign corporation under the same set of facts. But here the fact that the state court has ruled that such solicitation does not constitute doing business on which to found suit settles the question adversely to the plaintiff and the foreign corporation seeking to evade litigation in that state does not

need to try out the question of its constitutional protection against such litigation.[17] It looks, therefore, as though the current activities of Paper Company in Massachusetts form no basis for holding it amenable to suit in Massachusetts courts. The significance of its past activities has already been discussed above.

Another method of approach to this complicated problem may be had in tracing the corporate history of present defendant. It was set up as a New York corporation by a combination of a New York corporation and a Massachusetts business trust. The new corporation, Paper Company, present defendant, assumed liabilities of its parents. It is arguable and it has been argued here, that this assumption of liability was a New York act and not a doing of business in Massachusetts at all. If that argument should be accepted the support for Massachusetts jurisdiction against a child of that union, that is the present Paper Company, becomes thinner and thinner. We are not inclined to accept the correctness of this argument without exceedingly careful consideration. We mention it, however, as an additional factor which we, or any court, would have to treat and dispose of before final disposition could be made on the question of whether Paper Company is subject to suit in Massachusetts for the claims involved.

The conclusion to be drawn from this perhaps too detailed discussion of the jurisdictional point is that it is full of interesting and difficult legal questions. Any one of them would make a good moot court case and the decision of any one by a court might be made the subject of a legal essay and rate of paragraph in a learned treatise. But since the function of the Trustee here is not to enrich the literature of the law, but to use his best efforts in getting as much as he reasonably can for the benefit of Hydro, it is clear to us that the difficulties involved in the juris-

---

[14] Hunter v. Mutual Reserve Life Ins. Co., 1910, 218 U.S. 573, 31 S.Ct. 127, 54 L.Ed. 1155, 30 L.R.A.,N.S., 686.

[15] Thurman v. Chicago, Milwaukee & St. Paul Ry. Co., 1926, 254 Mass. 569, 151 N.E. 63, 46 A.L.R. 563.

[16] International Shoe Company v. State

of Washington, 1945, 326 U.S. 310, 66 S. Ct. 154, 161 A.L.R. 1057.

[17] Thurman v. Chicago, Milwaukee & St. Paul Ry. Co., 1926, 254 Mass. 569, 151 N.E. 63, 46 A.L.R. 563; Reynolds v. Missouri, Kansas & Texas Railway, 1916, 224 Mass. 379, 113 N.E. 413.

dictional point are very strong factors to be considered in the practicability of the terms of the settlement.

2. Are the Actions Barred? Paper Company contends very vigorously that they are. The Trustee says that there is no certainty that they are not. The appellants necessarily take the position that the actions are timely.

The Massachusetts Statute of Limitations applicable in both law and equity is six years. G.L.(Ter.Ed) c. 260, § 2. There is another section which provides that where one "* * * fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."[18]

The acts complained of by Hydro against Paper Company began in 1929 and ended in 1932 with the acquisition of certain properties located in Maine, New Hampshire and New York (hereinafter called New York properties). The lawsuits begun by the Trustee were started in 1943. It is obvious that the action will be barred unless it can be brought under the concealment exception to the running of the statute. It is also clear now that the plaintiff will have no advantage on this aspect of his case in the federal court over what he has in the state court. Since these suits were begun the Supreme Court has decided the important case of Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, which is conclusive authority for the statement just made.

Were the lawsuits in question to be tried, the points coming up under the statute would, therefore, have to do with whether factually and legally plaintiff's case can be brought under the fraudulent concealment exception. In this connection it is to be noted that there was a Federal Trade investigation of Hydro in 1931 and that report has been available since 1931. Are all shareholders, and especially the directors, charged with the information contained in this public document which concerns their company? The appellants tell us that Paper Company's domination of Hydro's board did not cease until 1939 and that the actions are well within the six year period after that. On the other hand, the Paper Company says there is no basis for contending that some of the directors (notably Mr. Arthur E. Childs and Mr. J. Howard Leman) have ever had any disqualification. They have been members of Hydro's board since early in the year of 1931. As a matter of fact Mr. Childs had objected originally to the purchase of the water properties and was largely responsible for the bargaining done regarding this purchase. Knowledge of all the directors of misconduct which would justify a cause of action is surely not necessary in a case of this kind in order that those not dominated shall do their duty with regard to the rights of the security holders who are being imposed upon.

We give no expression of our view on the question whether the actions were timely brought. We do agree with the Trustee that the question is not a clear nor easy one. The uncertainties residing in it were clearly sufficient to be a relevant and important element in determining the advisability of settlement.

3. The Question of Promoter's Profits. This question is concerned with the 1929 acquisition by Hydro from Paper Company of an interest in the New England Power Association securities. Paper Company created Hydro and sold it these securities. Paper Company advanced money to Hydro and took back obligations issued by Hydro. Out of this transaction it is charged that Paper Company made an inordinate profit at the expense of Hydro's security holders. It is to be noted that the argument regarding this point does not touch the 1932 transactions as to New York properties. It does, however, affect the New England Power Association stock transaction which was the largest item in the list of complaints which Hydro makes against Paper Company.[19] To the extent that a claim

---

[18] Mass.G.L.(Ter.Ed.) c. 260, § 12.

[19] Appellants contend that the loss to Hydro by this purchase was $53,136,534.69, plus loss of income on said stock since 1934.

based on this New England transaction is subject to defense or a scaling down of damages claimed, the amount involved in the settlement comes closer to being the actual amount which could have been recovered in favorable litigation.

Appellants naturally stress Old Dominion Copper Mining & Smelting Co. v. Bigelow [20] to furnish the rule which they say applies where promoters mulct the corporation promoted for their own benefit and to the cost of the security holders. To the extent that Massachusetts law controls, the Bigelow case would, of course, be applicable both to the suit in the Massachusetts court and the United States court. But both the Trustee and Paper Company stress the limiting Massachusetts decision of Hays v. The Georgian, Inc. [21]

So in litigation the question before a court would be whether Paper Company is liable on the promoter's doctrine in the Bigelow case or whether this transaction between Paper Company and its creation, Hydro, was not just a matter of shifting of money and securities back and forth in the same corporate family and thus brought under the limitations of Hays v. The Georgian, Inc. The appellants say that it is not so; that a public offering was contemplated, although they admit that the Georgian case is one that is to be taken very seriously in connection with this problem.

Here, again, we are not called upon to answer the question. All through these various arguments we are endeavoring to bear in mind the point that whatever facts were dug up in the Trustee's investigation were necessarily found ex parte. Mr. Brickley can report to the court what he thinks he could prove. But he has no way of knowing what countervailing facts could be brought out by the defendants when their side of the case is presented. So, here, if it could be established that the facts are not such as to bring the case under the doctrine of the Georgian case it might well be that the Bigelow decision could prevail full force. But there can be no possible doubt that the question of which one of these doctrines is applicable is a highly important one with regard to the recovery concerning the New England transactions. We think the answer is doubtful and that doubtfulness is a proper element to take into consideration concerning the desirability of a proposed settlement. [22]

## Conclusion After Application of Available Defenses to the Settlement Question.

The briefs and argument in this case have not only covered the questions discussed above, but some others as well. For instance, there is the problem of possible ratification of the transactions. There is appeal to the "business judgment" rule. It is suggested that there are difficulties of great magnitude in connection with the valuations of the properties acquired by Hydro from the Paper Company. We do not think that either the interest of the parties or the interest of the public would be benefited by a further discussion of these points by this Court. What has been said above is sufficient to show that the questions involved in the litigation begun by the Trustee are hard and complicated both in facts to be proved and law to be applied. $10,000,000 does not look so large when it is set up against $131,000,000 by a skillful advocate. The Court still thinks that $10,000,000 is a great deal of money. The District Judge told the Trustee it was proper to take the bird in hand instead of a prospective flock in the bush. Our consideration of the case convinces us that there was no abuse of discretion in so deciding.

[20] 1909, 203 Mass. 159, 89 N.E. 193, 40 L.R.A.,N.S., 314.

[21] 1932, 280 Mass. 10, 181 N.E. 765, 85 A.L.R. 1251.

[22] The Ropes, Gray, Best, Coolidge & Rugg Report, on p. 578 of the Transcript of Record, comments upon the difficulty of proving facts at a trial of this case as follows: "In this investigation we have had the advantage of examining many documents which ordinarily would not be available because compiled by the company against whom the court action would be had. These records were available only because International Paper was formerly the parent of IHES [Hydro], and duplicates were supplied to IHES of important papers of International Paper. It should be noted, however, that much of this material might well be inadmissible as evidence should this case come to trial."

### Applicability of Rule 52(a).

The appellants argue that the District Court erred in failing to follow the mandate of Rule 52(a) of the Federal Rules of Civil Procedure. The applicable language is: "In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment * * *".[23] We think there are at least two answers to appellants' contention here.

The first answer is that the court did find such facts as the nature of the case permitted. What was before the court? It was not the decision upon the facts or law involved in the two lawsuits brought by the Trustee, Mr. Brickley. It was the determination of whether or not in view of all the issues involved in those cases the settlement was for the best interests of the estate being administered under its direction. The court in its decree of December 26, 1945 found, inter alia, "That the court hereby determines that the compromise provided for * * * is for the best interests of the estate of said System [Hydro] that the consideration payable thereunder to said System is fair, reasonable, and adequate and that adequate notice and opportunity to be heard has been given to all persons interested * * *." These are findings of fact. They are ultimate facts, truly, and represent a judgment based upon the consideration of all the imponderables involved in determining whether the proposed offer met the requirements of being fair, reasonable and adequate. We do not see just what more could be asked for. Certainly the court was not required to put its guess as to the probable success of each claim and defense into a formally stated conclusion.

The second answer is that we do not think Rule 52(a) is applicable to this case. It would have been applicable in the case brought in the District Court by the Trustee against Paper Company, had that case been litigated to a conclusion. But in the cause which is now before us the court was not trying issues on facts; it was ad-ministering an estate under the provisions of a federal statute, the Public Utility Holding Company Act of 1935. Mr. Brickley, as Trustee, was in a position similar to that of a receiver. The provision of the Federal Rules applicable to such situation is Rule 66,[24] not Rule 52(a).

Our conclusion is that there was no failure on the part of the court to comply with the provision of the Rules of Civil Procedure.

The judgment of the District Court is affirmed.

---

[23] Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c.

[24] Federal Rules of Civil Procedure, rule 66, 28 U.S.C.A. following section 723c.