### BANKERS TRUST CO. v. GEBHART et al.

No. 190, Docket 22274.

United States Court of Appeals Second Circuit.

Argued Feb. 15, 1952.

Decided March 5, 1952.

White & Case, New York City (Jesse E. Waid, William St. John Tozier and Edward J. Kenn, all of New York City, of counsel), for trustee.

Reese D. Alsop, New York City, Hunt, Hill & Betts, New York City, of counsel, for Refunding Mortgage Bondholders Committee.

Elbert N. Oakes, Middletown, N. Y., for debtor.

W. Meade Fletcher, Jr., Washington, D. C. (Solis Horwitz, and Geo. E. M. McConley, Washington, D. C., of counsel), for Reconstruction Finance Corp., amicus curiae.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

About fifteen years ago, the debtor railroad went into, and has since remained in, bankruptcy-reorganization proceedings. No reorganization plan has been proposed during the past twelve years, i. e., since 1940 when the I. C. C. refused to approve a plan then proposed by the debtor "unless and until further operations of the property disclose the possibility of more profitable operations than is at present possible." [1] In that period, the earnings have been so small that there has been a dwindling of the value of assets available for payment of the holders of $20,000,000 face amount of Refunding Bonds for which the appellant is the indenture-trustee. The district judge has made no finding stating, and we cannot satisfactorily tell from this record, what "equity," if any, these bondholders now have after allowing for claims which rank ahead of them. Appellant three times, by cross petitions, has sought an order directing the bankruptcy trustees to apply to the Interstate Commerce Commission for an order authorizing the abandonment of the operations of the railroad, but the court below has never acted on any of those cross-petitions.

During the reorganization proceedings, the road has given up steam locomotives and substituted Diesel locomotives acquired under three Equipment Trusts, one Trust in 1941, one in 1945, and one in 1947. Payments on the principal amounts due on the Equipment Trusts have been made, with resulting "equities" in the bankruptcy estate.[2] The sum of the equities under the 1941 Equipment Trust ($67,000) and the 1945 Equipment Trust ($742,376) is $809,-

---

1. See 240 I.C.C. 156, 162. Section 77, sub. g of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. g, provides: "If in the light of all the existing circumstances there is undue delay in a reasonably expeditious reorganization of the debtor, the judge, in his discretion, shall, on motion of any party in interest or on his own motion, after hearing and after consideration of the recommendation of the Commission, dismiss the proceedings." Cf. New England Coal & Coke Co. v. Rutland R. Co., 2 Cir., 143 F.2d 179.

2. In more detail the facts are as follows:
   *Equipment Trust of 1941*
   Five 44-ton Diesel electric locomotives acquired.
   Cost of equipment was $181,688.
   $162,000 principal amount of Equipment Trust Certificates were issued.
   $8,000 is unpaid principal amount of Equipment Trust Certificates.

$67,000 represents equity of the estate in three remaining locomotives (two locomotives having been sold and the proceeds of $50,000 applied to payment of Equipment Trust Certificates.
   *Equipment Trust of 1945*
   Four 5400-H. P. and one 2700-H. P. Diesel electric locomotives acquired.
   Cost of equipment was $2,244,000.
   $1,695,000 principal amount of Equipment Trust Certificates were issued.
   $1,008,000 is unpaid principal amount of Equipment Trust Certificates.
   The depreciated value of such equipment as of December 31, 1950 (computed in accordance with method prescribed in Equipment Trust Lease) was $1,750,376.
   $742,376 represents equity of the estate in this equipment (depreciated value of equipment less unpaid principal of Equipment Trust Certificates).
   *Equipment Trust of 1947*

376. There is no default under the 1941 Equipment Trust. Both the 1945 and 1947 Equipment Trusts are in default. $378,000 principal amount of Equipment Trust Certificates issued under the 1945 Equipment Trust matured and remained unpaid as of August 31, 1951. $405,000 principal amount of Equipment Trust Certificates issued under the 1947 Equipment Trust had matured and remained unpaid as of August 31, 1951.

The Debtor's Trustees, by petition dated April 11, 1951, requested authority to execute an agreement with the Reconstruction Finance Corporation (the holder of all outstanding certificates issued under the Equipment Trusts of 1941, 1945 and 1947), providing for the extension of payment of (a) the principal of the 1945 Equipment Trust Certificates matured or to mature from June 1, 1949 to December 31, 1952, and (b) the principal of the 1947 Equipment Trust Certificates matured or to mature from June 1, 1949 to May 31, 1951, until four years from the stated maturity dates of said Certificates; and providing for the assignment by the Debtor's Trustees to the trustee under the 1947 Equipment Trust of all rights, interests and equity of the Debtor's Trustees in the railroad equipment subject to the 1941 and 1945 Equipment Trusts. At this time, $378,000 of the 1945 Equipment Trust Certificates and $405,000 of the 1947 Equipment Trust Certificates were in default, but there is no evidence that the Reconstruction Finance Corporation had made any moves or threatened to foreclose on the equipment because of these defaults.

Appellant filed its objections dated April 24, 1951, requesting that the petition be denied. In its objections, appellant incorporated and realleged the three pending cross-petitions for abandonment of operation of the properties covered by the lien of the Refunding Mortgage, modified only so as to be directed toward the pledge proposed in the petition. A hearing on the petition of the debtor's trustees was held before the judge. Toward the conclusion of the hearing, he said: "I feel that I am compelled to do nothing else but grant this petition, to keep this railroad going. You know and I know the trouble we have had over the years. I know that when your petition was presented for permission to go to the I. C. C. to abandon this road, I was deluged with letters and telegrams. This railroad is the life-blood of some communities through which it passes." The judge also expressed the view "that my paramount duty was to keep this road going, in the interest of the public." Soon after, he entered an order accordingly.

If there was an "equity" in the equipment subject to the lien of the Refunding Bonds, then it may well be that the judge "abused" his discretion by entering the order before he passed on the request concerning abandonment of operations. For, from the present record, it seems that, if such an equity exists, then, were the order not entered, that equity could be preserved only by such abandonment. But the record and findings now before us are so unsatisfactory that we are almost completely in darkness.

We therefore remand for a prompt hearing, in which evidence should be considered and findings made as to the approximate value of the remaining interest, if any, of the Refunding Bondholders in the equipment, after allowing for other claims having priority (but, for such purposes, ignoring the effect of the order on appeal). Should the judge find that those bondholders have any substantial "equity" in the equipment, he shall then vacate the order on appeal, and promptly hold a hearing, and make an order, with respect to the petitions for abandonment.[3]

Remanded with directions.

---

Two 3000-H. P., three 1500-H. P. and twenty-one 1000-H. P. Diesel electric locomotives acquired.
Cost of equipment was $3,081,535.
$2,600,000 principal amount of Equipment Trust Certificates were issued.
$2,095,000 is unpaid principal amount of Equipment Trust Certificates.
The depreciated value of this equipment as of December 31, 1950 (computed in accordance with method prescribed in Equipment Trust Lease) was $2,671,726.
$576,726 represents equity of the estate in this equipment (depreciated value of equipment less unpaid principal of Equipment Trust Certificates).

3. Of course, in connection with such a hearing, the judge may consider events which have intervened since the order on appeal was entered.