In the Matter of **FLYING W. AIRWAYS, INC.,** Debtor.

Appeal of **GIRARD TRUST BANK,** Appellant in No. 19504.

Appeal of **FARMERS BANK OF the STATE OF DELAWARE,** Appellant in No. 19505.

**Nos. 19504, 19505.**

United States Court of Appeals, Third Circuit.

Argued April 7, 1971.

Decided May 11, 1971.

Raymond W. Midgett, Jr., Dechert, Price & Rhoads, Philadelphia, Pa. (Owen B. Rhoads, Donald Beckman, Philadelphia, Pa., Henry M. Canby, Martin I. Lubaroff, Richards, Layton & Finger, Wilmington, Del., on the brief), for appellants.

Lewis H. Gold, Adelman & Lavine, Philadelphia, Pa. (Neil G. Epstein, William H. Ewing, Cohen, Spector, Goodman & Epstein, Philadelphia, Pa., on the brief), for appellees.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from a September 25, 1970, order of the United States District Court for the Eastern District of Pennsylvania denying, after a hearing, a secured creditor's motion to vacate a turnover order entered ex parte in a reorganization proceeding under Chapter X of the Bankruptcy Act.[1]

On September 21, 1970, agents of the appellants, Girard Trust Bank and Farmers Bank of the State of Delaware ("the Banks"), took possession in Alaska of two airplanes belonging to Flying W. Airways, Inc. ("Flying W"). The Banks had security interests in these airplanes, and Flying W was in default under the security agreements. Flying W immediately brought a replevin action in an Alaska state court, and obtained a temporary restraining order restraining the Banks from removing the airplanes from Alaska. On September 24, 1970, Flying W filed a petition in the United States District Court for the Eastern District of Pennsylvania for reorganization under Chapter X of the Bankruptcy Act. On the same day, the district court entered ex parte an order approving the petition for reorganization and appointing trustees for the

debtor's estate. Paragraph 4 of that order provided in relevant part:

That Robert C. * * *, Esq., and Eugene M. * * * be and are hereby appointed trustees of the estate of the said Debtor and that the said trustees upon filing a bond as hereafter provided shall be vested with all of the right, title and interest of the Debtor, as of the date of the filing of the said Petition for Reorganization, in all of its property, * * *

Paragraph 5 of that order provided in relevant part:

That the said trustees shall qualify by entering into bond to the United States in the sum of $100,000.—with such sureties as shall be approved by the Court, * * *

Paragraph 11 of that order provided:

That the said trustees shall be vested with full power and authority, and he is hereby instructed and directed to take all of the properties, assets and business of the Debtor, real and personal, wherever situated and of whatever nature, into his exclusive possession and control, and the Girard Trust Bank, Farmers Bank of the State of Delaware, PSL Air Lease Corporation, or any other person, their officers, directors, agents, employees, attorneys, nominees, successors, assigns, or other representatives, be and they are hereby jointly and severally, ordered and directed to surrender and turn over to the possession and control of the trustee any of the above properties, assets and business of the Debtor, real, personal or mixed, now in its or their possession and control, and the said Girard Trust Bank, Farmers Bank of the State of Delaware, PSL Air Lease Corporation, or any other person, and each and every of its or their said officers, directors, agents, employees, attorneys, nominees, successors, assigns and other representatives, be and they

1. This court has treated orders denying motions to vacate turnover orders as appealable orders. *See* In re Riker Delaware Corp., 385 F.2d 124 (3d Cir. 1967);

In re O. V. Corp., 378 F.2d 361 (3d Cir. 1967). The issue of appealability was specifically argued in the appellee's brief in In re O. V. Corp., *supra*.

hereby are jointly and severally restrained, enjoined and stayed from, in any manner whatsoever, interfering with or disturbing the trustee's right to exclusive possession and control of said properties, assets and business, real, personal or mixed.

Counsel for Flying W delivered a copy of the September 24 order to an officer of Girard Trust Bank about noon on September 24, and advised Alaska counsel for the Banks of the substance of the September 24 order. Counsel for Flying W also advised the Alaska state court in which the replevin action was pending of the substance of the September 24 order; and later on September 24 that court vacated the temporary restraining order which it had issued on September 21. Late in the afternoon of September 24, after vacation of the temporary restraining order, and with notice of the district court order of September 24, the Banks caused the airplanes to be flown from Alaska to Wilmington, Delaware.

On September 25, 1970, the trustees petitioned the district court to order the Banks to return the airplanes to Alaska at the Banks' expense. On the same day, approximately five minutes before a hearing on the petition, a copy of the petition was served on counsel for the Banks. At the hearing, counsel for the Banks moved to vacate the turnover portion of the September 24 order, and sought a plenary hearing on their motion to vacate. The district court conducted a brief hearing, refused to conduct a plenary hearing, denied the mo-

tion to vacate the turnover order, and entered an order requiring the Banks to return the airplanes to Alaska at their "sole cost and expense." The Banks promptly caused the airplanes to be returned to Alaska, and the cost of such return was $16,185.65. From the September 25, 1970, order requiring the Banks (a) to turn over the aircraft to the trustees, and (b) to return the airplanes at their own expense to Alaska, the Banks appeal.[2] The briefs make clear that appellants' appeal also challenges the district court's disregard on September 25, 1970, of the motion to vacate such turnover portions of the September 24, 1970, order. The September 25, 1970, order effectively denied such Motion to Vacate.

■ The Banks contend that before disregarding their motion to vacate the ex parte turnover order the district court should have conducted a plenary hearing to determine the justification for and the desirability of the transfer of possession from the secured creditor to the trustees. Specifically, the Banks urge that among the factors the district court should have considered at a plenary hearing are the probability of success of the reorganization; the value of and interests of the secured creditor and the debtor in the airplanes;[3] the sources and the probable amounts of the income, costs, profits or losses, as well as the hazards, from the operations in which the trustees propose to use the airplanes; the use of such income or profits; the existence of adequate insurance

2. The notice of appeal states that appellants: appeal to the United States Court of Appeals for the Third Circuit from: (1) so much of paragraph 11 of the order of September 24, 1970, as directs Girard Trust Bank and Farmers Bank of the State of Delaware ("the banks") to turn over to the trustees property of the Debtor in the possession of the banks (which was interpreted by the District Court and the trustees to include two aircraft numbered N30FW and N40FW ("the aircraft")); and (2) so much of the orders of September 25, 1970 directing the banks at their sole cost and expense to return the aircraft to those loca-

tions in the State of Alaska from which they were removed.

3. The Petition for Reorganization alleged that the debtor had instituted a proceeding in the Alaska state court to restrain the creditors from repossessing the aircraft (par. 7) but did not allege that the debtor had any equity in such aircraft. Furthermore, it did not allege that the petitioner had ever been operated at a profit or had any prospect of profitable operation. At the hearing on September 25, the only witness for the debtor conceded that "We have lost money every month." See also footnote 4.

coverage for the airplanes; the relationship of the trustees' possession of the airplanes to the trustees' reorganization efforts; and the imposition of appropriate conditions upon which any turnover might be granted.

 In In re O. V. Corp., 378 F.2d 361 (3d Cir. 1967), this court stated:

In this posture of the case we consider and decide only that the appellant was and is entitled to a plenary hearing on * * * [the motion to vacate the turnover order]. Whatever power the court may have had to enter an ex parte turnover order in first instance, once the party in possession had filed a motion to vacate the court could properly exercise its discretion whether to adhere to and enforce its ex parte ruling only after it had heard and weighed whatever showing the parties might make concerning the justification for and desirability of the transfer of possession from the secured creditor to the trustee.

378 F.2d at 362.

And in In re Riker Delaware Corp., 385 F.2d 124 (3d Cir. 1967), this court said:

Section 257 gives the trustee "the right to immediate possession of all property of the debtor in the possession of * * * a mortgagee under a mortgage." Obviously, that section contemplates transfer pursuant to an authoritative order, but it neither specifies the judicial officer who shall act upon the trustee's request for a turnover nor states that considerations pro and con shall be weighed in each case before such a turnover is ordered. However, the cases properly suggest that a court's disposition of such a matter as this should be predicated upon a determination and weighing of potential advantage of

the requested turnover in facilitating corporate reorganization on the one hand, and the likelihood of loss to the secured creditor in possession on the other. In re Third Ave. Transit Co., 2d Cir. 1952, 198 F.2d 703; cf. In the Matter of O. V. Corp., 3d Cir. 1967, 378 F.2d 361; Caplan v. Anderson, 5th Cir. 1958, 256 F.2d 416. An ex parte, unconsidered or routinely entered turnover order would disregard the harsh character of the imposition upon the secured creditor in possession and the danger that he be subjected to serious impairment of his security without real prospect of compensating advantage to all concerned through a successful reorganization of the financially embarrassed debtor. A turnover of property in which the debtor had no demonstrable equity could be confiscatory. And a turnover without prospect of reorganization would be alien to the purpose of a Chapter X proceeding. 385 F.2d at 125–126.

These decisions support the Banks' contention that a plenary hearing was required before the district court could deny the Banks' motion to vacate the ex parte turnover order, and require us to remand this case to the district court, so that the district court may conduct promptly a plenary hearing to consider fully whether adherence to and enforcement of its ex parte turnover order would facilitate a successful corporate reorganization, while minimizing the likelihood of loss to the secured creditor. Among the factors that the district court should consider are the probability of success of the reorganization, whether the debtor has any equity in the airplanes, and the relationship of the trustees' possession of the airplanes to the trustees' reorganization efforts.[4] Should

---

4. In this connection, it is noted that no profit and loss statement was attached to the Petition for Reorganization, even though section 130(4) of the Bankruptcy Act, 11 U.S.C. § 530(4) (1964), requires that "Every petition shall state * * (4) the assets, liabilities, capital stock, and financial condition of the corpora-

tion." Particularly where the balance sheet shows an unexplained asset item of "Investment—Subsidiary Companies" of $5,483,006.80 while showing a "Net Shareholders' Equity" of only $1,435,-206.73, the "financial condition of the corporation" is not adequately stated in the Petition.

the district court decide to adhere to its turnover order, it should consider the appropriate use of income and profits from the operations of the airplanes, with a view toward fashioning an order designed to minimize the possibility of loss to the secured creditor Any district court order permitting the trustees to retain possession of the airplanes should also require the trustees to obtain adequate insurance coverage for the airplanes.

■ On remand, the district court should also reconsider whether the cost of returning the airplanes to Alaska should be borne solely by the Banks. In reconsidering this part of its September 25, 1970, order, the district court should consider whether, in light of paragraph 4 of the September 24 order and the failure of the trustees to qualify immediately by filing the prescribed bond,[5] the Banks were bound by the September 24 order when they caused the airplanes to be flown to Wilmington. The district court should also consider whether causing the airplanes to be flown to Wilmington was a violation of the terms of the September 24 order, especially in light of the Banks' contentions concerning lack of insurance to cover the airplanes while they were in Alaska.

For the reasons stated above, that part of the September 25 order directing the return of the aircraft to Alaska at the sole cost of the secured creditors will be vacated[6] and the case will be remanded to the district court for a prompt hearing and further proceedings consistent with this opinion.

5. The docket entries show that the trustees did not file their bond, and documents 4 and 5 show that the affidavits establishing their qualifications were not filed until September 25, 1970.

6. We express no opinion on whether or not the trustees are entitled to continued possession of the aircraft, as the facts necessary for that determination will not

be available until the prompt hearing on the motion to vacate the turnover order is held. However, the propriety of ordering the return of the aircraft to Alaska at the sole cost of the secured creditors should be considered de novo without any presumptions arising from an existent ex parte order subject to a motion to vacate on which motion there has not been granted a full hearing.