William J. HARDING, Jr., Irving I. Schnur, and Shirley Reiter, Appellants,

v.

Herman T. STICHMAN, Trustee of the Debtor, et al., Appellees.

In the Matter of HUDSON & MANHATTAN RAILROAD COMPANY, Debtor.

In Proceedings for the Reorganization of a Corporation Pursuant to Chapter X of the Bankruptcy Act.

No. 253, Docket 24453.

United States Court of Appeals Second Circuit.

Argued Jan. 9, 1957.

Decided Jan. 14, 1957.

House, Grossman, Vorhaus & Hemley, New York City (Edward M. Garlock, New York City, of counsel on the brief), for appellants.

McGoldrick, Dannett, Horowitz & Golub, New York City (William W. Golub, Jerome Talbert, New York City, Herbert D. Schwartzman, New York City, of counsel on the brief), for trustee of debtor.

Thomas G. Meeker, Gen. Counsel, David Ferber, Asst. Gen. Counsel, Washington, D. C., and Richard V. Bandler, Atty., New York City, for Securities and Exchange Commission.

Kelley, Drye, Newhall & Maginnes, New York City (Frank H. Heiss, New York City of counsel on the brief), for Hanover Bank, trustee under first lien and refunding mortgage.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City (Thomas O'G. Fitzgibbon, New York City, of counsel on the brief), for Guaranty Trust Co. of New York, indenture trustee under first mortgage.

Morton E. Yohalem, Washington, D. C., for protective committee for holders of first lien and refunding bonds.

Cravath, Swaine & Moore, New York City (Frederick E. Beebe, New York City, of counsel on the brief), for Chemical Corn Exchange Bank, indenture trustee under adjustment income mortgage.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

**PER CURIAM.**

Appellants, senior bondholders in the Hudson & Manhattan Railroad Company, which is now undergoing a Chapter X reorganization, appeal from Order No. 136, dated November 26, 1956. This order permits and directs the reorganization trustee to purchase 20 new railroad cars for the "joint service" run operated by the Hudson & Manhattan in conjunction with the Pennsylvania Railroad Co. between Newark, N. J. and New York City, to cost $1,675,272. under an offer open until January 15, 1957. Because outside financing is not available, funds for the new cars are to come from cash on hand, except for $300,000. which the builder of the cars has agreed to finance.

The court based authorization of the expenditure on the undisputed fact that the present cars used by the Hudson & Manhattan on this run are in such poor condition as to be hazardous, and his further conclusion that the only alternatives—total or partial abandonment of either this run or of all railroad operations—would be even more detrimental to the estate than the expenditure. The appellants, who hold $46,000. face value of the $28,000,000. of outstanding bonds, assert that the judge's conclusions are not supported by the evidence, and that the expenditure will impair their security. For support, they rely heavily on In re Third Avenue Transit Corp., 2 Cir., 1952, 198 F.2d 703. We find that the court's findings are sufficiently supported and that the Third Avenue case is distinguishable on several grounds.

It is not seriously disputed that the only alternatives to purchase of the cars are temporary or total abandonment of the joint run or total abandonment of the railroading operations. The conclusion that abandoning the joint service completely "was both impractical and impossible" does not seem to be seriously disputed.

Appellants argue, however, that the court's analysis of the consequences of temporary abandonment of the joint

service or total abandonment of the railroad operation is so unsupported as to constitute an abuse of discretion. Judge Walsh, looking only at "the black side of things," concluded that the new cars would probably not produce profit on the overall operations, after depreciation and amortization were taken into account, but that they would produce a reduction of the loss and ultimately less damage to the estate. For this conclusion, he relied on these considerations: For either form of abandonment, approval by the Interstate Commerce Commission would be necessary and this would not only be time-consuming, but also expensive. Moreover, such delay and expense might be completely useless, since approval was very doubtful in view of the public service involved; approval for total abandonment would be particularly dubious since the road was "making money as far as operating income is concerned." An additional consideration in the judge's mind, and a very proper one, was the possibility of increased revenues because of increased fares, the revision of the contracts with the Pennsylvania Railroad and the possible closing of the trans-Hudson River ferries. All of these factors convince us that the order cannot be considered an abuse of discretion.

It is this support for the order which is one of the factors distinguishing this case from Third Avenue. Moreover, in that case the trustee sought to use the funds for working capital, thereby raising the possibility that "unlike the R. F. C.'s tangible inventory security, the cash could be readily dissipated by improvident trustees, leaving the bondholders nothing of any substantial value in return." 198 F.2d at page 706, note 7. Here, cash assets are being replaced by tangible assets which may actually increase the total value of the estate in the event of liquidation and sale to a public authority. Other factors not present in Third Avenue, but present here, are the unavailability of outside financing and a finding that the reorganization will not be impeded. See 198 F.2d at pages 703–704.

Appellants make several additional contentions which can be disposed of briefly. They assert that their right to cross-examine the impartial expert witness was improperly curtailed by the court's refusal to allow them to show, on cross-examination, a possible increase in contemplated expenditures, restricting them to direct examination for this point. The court's reason for this was that the contemplated line of questioning was outside the scope of the project assigned the witness. We find no error in this ruling.

Appellants also argue that the judge improperly denied their motion to re-open the hearing in order to introduce new evidence that wage rates might rise, which would indicate higher future expense. This denial, based on the judge's view that the possible wage rise had already been before the court frequently, is clearly correct.

Finally, appellants contend that the order improperly permits the trustee to sell property of the debtor in order to finance the purchase. The order does provide that the trustee is authorized to pay for the new cars "to the extent that the purchase price is not financed with the proceeds from sales of the Debtor's property and the Debtor's general cash funds in his possession." At first blush this provision seems broad, but in oral argument the trustee made it clear that there would be no further sale of Hudson & Manhattan property without first seeking permission from the court. In any event, necessary funds for the purchase in question are already on hand. We therefore need not and do not pass on the propriety of this part of the order.

We also note that except for the appealing bondholders, other parties to the proceedings have appeared and expressed their approval of Order No. 136. The Securities and Exchange Commission, charged with public responsibility in these matters, has appeared and filed a brief in support of the order in contrast to the opposition which it expressed in the Third Avenue case.

Affirmed.