**In the Matter of CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Debtor.**

**Appeal of Henry CROWN et al., Intervenors.**

**Nos. 76–1149 to 76–1151.**

United States Court of Appeals, Seventh Circuit.

Argued June 9, 1976.

Decided Dec. 2, 1976.

**1088**

Charles H. White, Jr., Interstate Commerce Commission, Washington, D.C., Samuel K. Skinner, U.S. Atty., John W. Rowe, Milton L. Fisher, Albert E. Jenner, Jr. and Robert L. Bombaugh, Daniel R. Murray, Chicago, Ill., for appellant.

Norman H. Nachman, Nicholas G. Manos, John J. Naughton, Chicago, Ill., for appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and SPRECHER, Circuit Judges.

SWYGERT, Circuit Judge.

This is an appeal from an order of the district court sitting in a railroad reorganization proceeding under Section 77 of the Bankruptcy Act, granting two petitions presented by the Trustee of the Debtor. The issue presented is whether the district court may, consistent with the Fifth Amendment and Section 77 of the Act, authorize the Trustee of a railroad in reorganization, pending submission of a plan, to incur long-term debt and lease obligations without making a determination that reorganization is likely within a reasonable time and without a showing of compelling need. The district court granted both petitions and intervenors-appellants brought this appeal.

The Debtor, Chicago, Rock Island and Pacific Railroad Company (hereinafter Rock Island) is a railroad carrier engaged in interstate transportation in thirteen states. On March 17, 1975 it filed a petition for reorganization pursuant to Section 77 of the Bankruptcy Act, 11 U.S.C. § 205. The district court approved the petition and on March 28, 1975 appointed William M. Gibbons as Trustee.

On July 30, 1975 the Trustee petitioned in the district court for authority to issue Trustee's certificates in the amount of 22.6 million dollars for repairs, rehabilitation and maintenance of the railroad.[1] The certificates, if and when issued, would be accorded the status of an expense of administration with the highest lien on the Debtor's property and priority in payment pursuant to the Bankruptcy Act. The Trustee also requested authority to file an application with the United States Secretary of Transportation for a guarantee of nineteen million dollars for the certificates, as provided for in the Emergency Rail Services Act of 1970, 45 U.S.C. §§ 661, et seq.[2] In addition, he sought authority to file an application with the Interstate Commerce Commission under Section 20a of the Interstate Commerce Act for its approval of issuance of the certificates. The district court authorized the submission of both applications.

Subsequently, on October 28, 1975, the Trustee filed a separate petition for authority to lease fifty-six new diesel locomotives for fifteen years at an annual rental of $2,562,000. The acquisition was to be financed in part by trading or selling a similar number of obsolete locomotives. The leases would also be accorded the status of an expense of administration and be entitled to priority in payment over other creditors.

The Debtor railroad supported the Trustee's petition for authority to issue certificates but initially opposed the petition concerning the locomotives. It later modified

---

1. The Trustee brought the petition pursuant to Section 77 of the Bankruptcy Act which provides:

 The judge may, . . . for cause shown, and with the approval of the Commission, in accordance with section 20a of Title 49, as of August 27, 1935 or thereafter amended, authorized the trustee or trustees to issue certificates for cash, property, or other consideration approved by the judge, for such lawful purposes and upon such terms and conditions and with such security and such priority in payments over existing obligations, secured or unsecured, or receivership charges, as might in an equity receivership be lawful.

2. The Trustee had determined that absent a Government guarantee of such certificates, it would be impossible to market them with banking and financial institutions.

its response with a statement that it would be prudent if the Trustee were authorized to lease substantially fewer than fifty-six new locomotives. Both petitions were opposed by several intervenors: The Crown intervenors, holders of substantial blocks of Rock Island common stock, first mortgage bonds, and income debentures; The First National Bank of Chicago, as Trustee under the First Mortgage Indenture for first mortgage bondholders; and Continental Illinois Bank and Trust Company of Chicago, as Trustee under the Income Debenture for unsecured income debentureholders. Claimant Pullman Transport Leasing Company also opposed the Trustee's petition to issue certificates.[3]

On September 10, 1975 the district court held the first hearing on the issuance of certificates. After considering extensive oral testimony and written evidence, the district court granted both Trustee's petitions in a memorandum opinion and order entered January 16, 1976.

On April 20, 1976 the Secretary of Transportation issued written findings pursuant to Section 3(a) of the Emergency Rail Services Act of 1970, 45 U.S.C. § 662(a) and determined that he, as secretary, would guarantee certificates to be issued by the Trustee in the sum of 17.5 million dollars. On June 1, 1976 the Interstate Commerce Commission approved the issuance of the Trustee's certificates.

The Trustee petitioned the district court for an order implementing the January 16, 1976 order authorizing the issuance of Trustee's certificates on June 1, 1976; on June 4 the district court granted the petition. On July 26 the Trustee petitioned the court for an order implementing the order of January 16, 1976 authorizing the lease of fifty-six new diesel locomotives and the trade-in or sale of fifty-six obsolete diesel locomotives.

The intervenors Crown, et al., on July 26 presented the district court with a motion for stay of proceedings to stay its January 16, 1976 order. The motion was denied.

On the same day the intervenors filed a similar motion before our court. On August 5 we also denied the motion.

On August 1, 1976 the Bankruptcy Rules applicable to Chapter VIII proceedings (Interstate Railroad Reorganizations) took effect. Rule 8–703(a)(6) provides:

The following shall be added to Rule 62: Effect of Appeal on Unstayed Order. Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency of the appeal.

We asked the parties to submit briefs on the issue of whether this appeal has become moot upon enactment of Rule 8–703(a)(6). After considering the responses, we find that the issues are not moot.

Although the Federal Financing Bank has made advances to Rock Island under the Trustee's certificates, not all of the money advanced has been drawn down and expended. The Trustee is authorized to make further draw downs of up to $11.3 million on the certificates; thus, it would be possible for the court to grant relief in the form of enjoining any further draw downs. Moreover, the Federal Financing Bank would not be a "good faith holder" with respect to funds not yet advanced as it would not yet have given "value" for the Trustee's certificates.

Because the leases are assignable, it is possible that some or all of the leases could be assigned, alleviating the burden of any unwarranted lease costs upon the estate. Moreover, both of the actions by the Trustee here, the obtaining of funds on a Trustee's certificate and the entering into new operating leases, are of the type which might recur and yet evade review with the possibility of causing similar injury. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

---

**3.** Pullman Transport Leasing Company is not a party to this appeal.

For the foregoing reasons we proceed to decide this appeal, and we conclude that the challenged order of the district court should be affirmed.

■ The test cited by the appellants would require a showing by the Trustee that there is a "high degree of likelihood" (1) "of reorganization within a reasonable time" and (2) "that the secured creditors will not be injured." This test is derived from *In re Third Avenue Transit Corp.,* 198 F.2d 703 (2d Cir. 1952), and *In re Penn Central Transportation Co. (Columbus Option),* 494 F.2d 270 (3d Cir. 1974). *Columbus Option* raises the *Third Avenue* test to a constitutional requirement, necessary to avoid a violation of the Fifth Amendment. The appellants argue that, because the certificates are given highest priority, their security is in danger of erosion. Their position is that, without such findings by the court upon application of this test, the result is an unconstitutional deprivation of their property without due process of law.

We do not believe that the test propounded by the appellants is of constitutional dimension. The *Third Avenue/Columbus Option* test goes too far. It may force further deterioration of a debtor's situation by preventing interim borrowing which might otherwise be necessary and profitable. This may prevent reorganization altogether, resulting in liquidation with consequent detriment to both unsecured creditors and the public. The standard allows measures such as those taken in the instant case only in the most limited circumstances. We believe that the Fifth Amendment does not require such a strict test.

The instant case arose very early in the reorganization proceedings, and a ruling by the court at this stage on the reorganizability would have been premature. *See In re Boston and Maine Corp.,* 484 F.2d 369 (1st Cir. 1973). The court there recognized that it could not alone properly determine whether reorganization was highly likely at this early stage. Thus, in cases, such as this one, where it is impossible for the court to determine reorganizability, application of the test espoused by appellants would necessarily result in the denial to trustees of any authority to prudently borrow or lease when to do so may well be necessary to continuing operations of the debtor.

The Third Circuit considered this question in *In re Penn Central Transportation Co. (Selkirk Yard),* 474 F.2d 832 (3d Cir. 1973). That case involved approval of the use of proceeds from a sale of mortgaged property to improve a freight yard. The trustees there had not yet filed a reorganization plan. The court held that it was too early to make a prediction on reorganizability and that the appropriate standard was a showing that reorganization was "not improbable." *Selkirk Yard* was decided before *Columbus Option,* but it was cited with approval by the court in the latter case.

The Second Circuit, which formulated the *Third Avenue* test, does not appear to have ever raised its test to constitutional stature. In fact, in later cases, that court appears not to have adhered strictly to the test. In other reorganization cases it approved findings that "reorganization will not be impeded" (by a proposed expenditure for new passenger cars), *Harding v. Stichman,* 240 F.2d 289 (2d Cir. 1957), and that there was a "reasonable possibility" of successful reorganization. *Cf. In re Bermec Corp.,* 445 F.2d 367 (2d Cir. 1971); *In re Yale Express Systems, Inc.,* 384 F.2d 990 (2d Cir. 1967).

Whether there is a "high degree of likelihood" of no injury to the creditors, the second part of the test, is naturally tied in to the likelihood of successful reorganization. We do not believe that the Fifth Amendment requires the trustee to show this either. The due process clause of the Amendment is not violated by anything less than actual impairment of a creditor's security.

■ In the instant case, the approval of the Trustee's actions was a matter within the discretion of the district court. *Continental Illinois Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co.,* 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed.1110 (1935). Its decision can only be reviewed for an abuse of that discretion, and we fail to find such

here. The judge in his memorandum opinion and order found that reorganizability could not be determined at this early stage in the proceedings, but that it was "not clearly impossible." He also considered the facts and noted that the situation of the railroad appeared to have changed. The court found that the actions of the Trustee were "essential to the continued operation of the road" and that these would have a "direct beneficial effect on profitability." Taking all of this into account together with the public interest in maintaining the operation of the railroad, we cannot say that the court abused its discretion in this case.

The district court's order granting the Trustee's Petition to Issue Certificates and Petition to Lease Locomotives is affirmed.