641 F.2d 482
 In the Matter of CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC
RAILROAD COMPANY,
Debtor. Appeal of MONTANA DEPARTMENT OF AGRICULTURE and the
Montana Wheat
Research and Marketing Committee. Potlatch Corporation and
St. Marie's River Railroad Company, Intervening Appellees.
 No. 80-1745.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 14, 1981.
Decided Feb. 13, 1981.
 
 Raymond W. Brault, Montana Dept. of Agriculture, Helena, Mont., for debtor.
 Ann W. Fraser, Isham, Lincoln & Beale, Chicago, Ill., for intervening appellees.
 Before PELL and WOOD, Circuit Judges, and SPEARS, Senior District Judge.*
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 This case involves the appeal of the Montana Department of Agriculture and the Montana Wheat Research and Marketing Committee ("Montana") from a district court decision[1] rendered in the course of the bankruptcy reorganization of the Chicago, Milwaukee, St. Paul and Pacific Railroad ("Milwaukee Road"). That decision authorized the trustee of the Milwaukee Road to sell certain abandoned property of the Milwaukee Road to Potlatch Corporation and St. Marie's River Railroad Company ("Potlatch"). The decision also denied Montana's motion to reconsider three earlier district court orders[2] that authorized the trustee to abandon certain rail lines and that gave preliminary approval to the trustee's sale of certain lines to Burlington Northern, Inc. ("Burlington Northern"), granting it authority to operate interim service over those lines as a common carrier. We dismiss as moot Montana's appeal from the sale to Potlatch. We affirm the remaining portions of the district court's decision.
 
 I.
 
 2
 In 1979, this court authorized the termination of service by the Milwaukee Road over certain rail lines and established a deadline for the termination. In re Chicago, Milwaukee, St. Paul & Pacific Railroad Company, 611 F.2d 662 (7th Cir. 1979). The present case involves the district court's actions in overseeing the trustee's efforts to terminate service as required by that decision in a way that would minimize disruption of existing service and benefit the Milwaukee Road estate.
 
 
 3
 Montana became involved in this case when it learned that the trustee was negotiating with Burlington Northern for the sale of certain rail lines. The trustee broke off those negotiations when Montana indicated its desire to purchase a portion of those lines. As the deadline for termination of rail service approached and no assurance of ability to finance a purchase was forthcoming from Montana, the trustee sought the district court's preliminary approval of the previously negotiated sale to Burlington Northern. The district court gave its approval and directed Burlington Northern to promptly file a purchase application with the Interstate Commerce Commission ("ICC"). Under the court's order, the ICC was to make a determination on the application within 90 days of the date of filing.
 
 
 4
 Montana asked the district court to reconsider its decision on the sale to Burlington Northern and on a later order that authorized the abandonment of certain other rail lines. The request was based on newly-presented documents that Montana said showed the sale would violate protective provisions imposed by the ICC when it approved the merger creating the present Burlington Northern system. Montana also claimed that some of the documents undercut the district court's factual findings as to the revenue potential of the abandoned rail lines at issue here. Montana wanted the abandonment orders vacated "to permit further progress on a purchase proposal by the State of Montana." Order 331 at 2-3.
 
 
 5
 In the meantime, the trustee asked for authority to sell to Potlatch certain of the Milwaukee Road's abandoned property located in Idaho. Potlatch wanted to operate the line as a private rail service. Montana objected to the Potlatch sale, citing potentially disruptive effects on Montana commerce of terminating public use of the Idaho rail lines.
 
 
 6
 The district court heard the trustee's motion along with Montana's motion for reconsideration. The court denied Montana's motion, saying that the new documentary evidence would more properly be considered by the ICC in making its final determination on Burlington Northern's purchase request. The court noted that the documents did not bear on Montana's apparent inability to finance a purchase of the desired rail lines, so vacating the abandonment orders would not solve Montana's (and the trustee's) basic problem. The court also found that the trustee had fulfilled his obligation "to fully pursue all possibilities for the sale of portions of these lines for continued rail operation or other public use." Order 331 at 5.
 
 
 7
 The district court granted the trustee's motion and approved the sale to Potlatch of the abandoned lines. Montana did not request a stay of the sale. The sale was closed soon afterward, and rail operations began following the ICC's approval of service.
 
 II.
 
 8
 The trustee has moved to dismiss as moot Montana's appeal of the sale to Potlatch. The trustee argues that dismissal is required under Bankruptcy Rule 8-703(a)(6), which provides that unless an order approving a sale of property is stayed pending appeal, the sale to a good faith purchaser "shall not be affected by the reversal or modification of such order on appeal."[3] As noted, Montana did not request a stay. Since Montana seeks relief through the district court's ultimate determination on reconsideration that the sale is void, the trustee contends that under Rule 8-703 neither we nor the district judge are able to grant relief and thus the issue of the sale is moot. We agree.[4]
 
 
 9
 The parties have not cited, and our research has not uncovered, any decision applying Rule 8-703 to a reorganization trustee's sale of property. This circuit has, however, considered the Rule's application to the issuance of trustee's certificates in the course of a railroad reorganization. Matter of Chicago, Rock Island and Pacific Railroad Co., 545 F.2d 1087 (7th Cir. 1976). The court concluded that under the facts of that case the issue was not moot, even though the appellants failed to obtain a stay.[5] The court noted that the trustee had not drawn down all the money advanced under the certificate arrangement, and so the outcome of the appeal would have a practical effect on unpaid sums. In addition, the Federal Financing Bank was not a "holder" in regard to funds not yet advanced.
 
 
 10
 Here, by contrast, the sale to Potlatch has been closed and service commenced over the rail lines. Nothing remains to be done in regard to this sale.
 
 
 11
 It also is pertinent to our disposition of this case that the Rock Island appellants included institutional creditors and shareholders in the railroad. Their interests would be adversely affected with each additional draw down on the trustee's certificates, since the certificates would be accorded the highest priority in the event of a liquidation. In this case, Montana's desire is to keep the entire rail line open as a single public entity. The sale to Potlatch, which effectively brings to an end the possibility of fulfilling that desire, means there is no chance that future sales by the trustee of abandoned lines would create a similar redressable issue that nevertheless would evade review. See 545 F.2d at 1089. The issue of the sale to Potlach is moot.
 
 
 12
 We find support for our conclusion in an analogous case that involved a trustee's sale of property in the course of a corporate reorganization. Matter of Combined Metals Reduction Co., 557 F.2d 179 (9th Cir. 1977). There, the court dismissed as moot an appeal from district court orders authorizing the trustee to sell certain of Consolidated's plant capacity, since the appellants had not sought a stay. Discussing the issue of mootness in terms of general principles governing appellate review, the court analogized to Bankruptcy Rule 10-801(2). That rule contains a provision identical to Rule 8-703(a)(6), but applies to the appeal to district judges from orders of bankruptcy judges in reorganization cases.[6]
 
 
 13
 The court concluded that there was "no reason why the result (under Rule 10-801) should be different for an appeal to this Court." 557 F.2d at 188-89. The opinion went on to emphasize that "the practical necessities involved in a successful reorganization require that unless an order of ... the district judge is stayed pending appeal, the trustee's acts in accordance with that order should not thereafter be subject to reversal." Id. at 189. This observation is equally applicable in the case before us. Successful reorganization of the Milwaukee Road's remaining lines depends upon its obtaining immediate capital for continuing operations; the sale of abandoned lines is a logical source of that capital.
 
 
 14
 Montana's appeal from the district court's order approving the trustee's sale to Potlatch of certain rail lines is dismissed as moot.[7]
 
 III.
 
 15
 The remaining issues in the case are a) whether the district court had jurisdiction under section 5 of the Milwaukee Railroad Restructuring Act, Pub.L.No.96-101, 93 Stat. 737, 45 U.S.C. § 904 (1979) ("MRRA") to give preliminary approval to the trustee's sale of certain rail lines to Burlington Northern; and b) whether the court erred in denying Montana's motions to reconsider that approval and an approval of the abandonment of certain Milwaukee Road lines.
 
 
 16
 Montana argues that the district court could not authorize the sale to Burlington Northern on a preliminary basis because the MRRA conditions such authorization on Burlington Northern's having already filed an application with the ICC for that agency's approval of the sale. Montana relies on subparagraph 5(b)(3) of the MRRA, which reads in relevant part:
 
 
 17
 Pending review of an application by the Commission pursuant to paragraph (2) of this subsection, the bankruptcy court may, on a preliminary basis, authorize the sale or transfer of lines of the Milwaukee Railroad to another rail carrier. The court may permit the purchasing carrier to operate interim service as a common carrier over the lines to be purchased without regard to section 10901 of title 49 of the United States Code.... The bankruptcy court may take final action authorizing any such sale or transfer only in accordance with paragraph (1) of this subsection.
 
 
 18
 We cannot agree with Montana's interpretation of subparagraph 5(b)(3). The last sentence of that subparagraph distinguishes between preliminary and final action taken by the district court on sales of Milwaukee Road property to be used in continued rail operations. Here, subparagraph (b)(1) of section 5[8] by reference to subparagraph (b)(2),[9] states that final approval may not be given by the district court unless the ICC has received and ruled upon Burlington Northern's application. Preliminary approval, however, may be given under subparagraph (b)(3) allowing a reasonable time for preparation by Burlington Northern of its application to the ICC for approval of the sale, as ordered by the district judge in this case.
 
 
 19
 It would make no sense to further burden a railroad undergoing reorganization with the choice of either undertaking the expense to operate rail lines or else terminating service over those lines pending preparation of a lengthy document for submission to the ICC. This is especially clear here, where section 2 of the MRRA expresses Congress' belief in the necessity of maintaining rail operations without undue disruption throughout the reorganization. It is perhaps the oldest canon of statutory interpretation that a statute be construed with the overriding purpose of the legislature kept firmly in mind. Heydon's Case, 30 Ca. 7a, 76 Eng.Rep. 637 (Exchequer 1584); Church of the Holy Trinity v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892); Foulkes v. Commissioner of Internal Revenue, 638 F.2d 1105, at 1110, No. 79-1945, (7th Cir. 1981). See generally W. Hurst, Statutes in Court 141-43 (1970). Congress' overriding purpose to prevent needless breaks in continuity of rail service, which purpose is expressed on the face of the MRRA, supports our conclusion that the district court had jurisdiction to preliminarily authorize the sale to Burlington Northern whether or not an application for approval of the purchase was then pending with the ICC. The provision of the district court's order that requires Burlington Northern to file the application and sets a deadline for ICC determination comports with the terms of the statute.
 
 
 20
 It remains, then, to determine whether the district court abused its discretion when it denied Montana's motion to reconsider earlier orders that preliminarily approved the sale to Burlington Northern and authorized the abandonment of certain Milwaukee Road rail lines. As discussed earlier, Montana based its request for reconsideration upon documents which it said indicated that the factual bases underlying the district judge's decisions were faulty.
 
 
 21
 The district court reviewed the documents and concluded that as they bear on the sale to Burlington Northern, the ICC was in the best position to make the initial determination as to their significance. Some of the documents, the district court noted, relate to conditions imposed by the ICC itself on acquisitions by Burlington Northern. The district judge acted within his discretion in deferring his own conclusions until the ICC had the opportunity to review the documents in the context of this case.
 
 
 22
 The district court refused to reconsider its decision as to abandonment for sale of certain Milwaukee Road lines, since "the crucial considerations (governing the abandonment) remain unaffected by this new (documentary) evidence." Order No. 331 at 3. The documents, the court concluded, did not affect the original revenue projections that suggested selective abandonment was in the best interests of the public and the estate. Moreover, the court noted that no source of financing appeared to be within reasonable grasp of Montana to facilitate its purchase of the lines. Thus, the district court determined that continued operation of those lines pending further efforts by Montana to obtain financing could not be justified in light of the drain on Milwaukee Road assets occasioned by the delay in abandonment.
 
 
 23
 The district judge further concluded that the trustee had complied with the court's order "to fully pursue all possibilities for sale of other portions of those lines for continued rail operation or other public use, and this protects the interest of the State of Montana as well as others." Order No. 331 at 5. Given the history of the trustee's attempts to negotiate the sale of rail lines to Montana, and that state's inability to provide necessary assurances of financial ability, the district court acted within its discretion when it refused to reconsider its earlier authorization of abandonment.
 
 IV.
 
 24
 The appeal as to the portion of the district court's order concerning the sale to Potlatch is dismissed. The remainder of the district court's order denying Montana's motion to reconsider is affirmed.
 
 
 
 *
 The Honorable Adrian A. Spears, Senior District Judge of the Western District of Texas, is sitting by designation
 
 
 [1]
 Order No. 331 (May 15, 1980)
 
 
 [2]
 Orders No. 295 (March 18, 1980), 307 and 307A (April 2, 1980)
 
 
 [3]
 Bankruptcy Rule 8-703(a)(6), effective August 1, 1976, amends Federal Rule of Civil Procedure 62 as applicable in reorganization cases to read:
 "(i) Effect of Appeal on Unstayed Order. Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency of the appeal."
 
 
 [4]
 Montana has accused the trustee of acting in bad faith while negotiating with that state. There is nothing in the record to sustain that charge. Specifically, Montana claims that the trustee did not provide adequate notice about its request for approval of the sale to Potlatch. Yet the state has not suggested what evidence it would have provided in opposition to the sale other than the arguments and documents that it in fact presented at the hearing. Given the district court's specific finding that the trustee complied with its order "to fully pursue all possibilities for the sale of these lines for ... public use," we conclude that Montana's claim of bad faith on the trustee's part is without merit. At any rate, even if the trustee had acted in bad faith, which we find he did not, that would not of itself alter the position of Potlatch as a good faith purchaser and the issue of the sale still would be moot
 
 
 [5]
 Both the district court and court of appeals in that case had denied the appellants' motions for a stay. Bankruptcy Rule 8-703 was enacted after the denials of the motions, but prior to oral argument. The court considered the Rule's effect under the assumption that the Rule governed in the existing posture of the case
 
 
 [6]
 The court did not consider the direct effect on that case of Rule 8-703(a) (6)
 
 
 [7]
 The trustee's motion to dismiss the remaining portion of the case is denied. The trustee argues that the appeal from that portion of the district court's order dealing with the documents proffered by Montana is not ripe for review, since the ICC has yet to render a decision on that issue. Since the remaining questions in this appeal bear on the propriety of the district court's refusal to reconsider certain of its orders, the outcome of the administrative proceedings plays no role in the issues we must decide. Rather, the question is whether the district court correctly put the issue before the ICC to begin with. We also note that there is some confusion surrounding the facts involved in this portion of the trustee's motion. Montana argues without rebuttal that the ICC already has completed its investigation, but that it failed to deal with some of the issues raised by the documents. Nothing to this effect appears in the record, however, and we think the record is inadequate on this point to make dismissal appropriate
 We deny the portion of the trustee's motion that argues for dismissal because Montana failed to file a direct appeal from the original orders that authorized the trustee to abandon certain rail lines. As noted, Montana seeks review of the district court's refusal to reconsider its initial decision on the basis of newly-presented documents. We can reach that question without deciding the merits of the underlying order.
 
 
 [8]
 Subparagraph (b)(1) reads in pertinent part:
 Upon the occurrence of an event described in section 22(b) of this Act, or on April 1, 1980, whichever first occurs, the bankruptcy court may authorize the sale or transfer of a line of the Milwaukee Railroad to be used in continued rail operations, subject to the approval of the Commission under paragraph (2) of this subsection....
 
 
 [9]
 Subparagraph (b)(2) reads:
 The bankruptcy court may not authorize a sale or transfer pursuant to paragraph (1) of this subsection unless an appropriate application with respect to such sale or transfer is initiated with the Commission and within such time as the court may fix, not exceeding 180 days, the Commission, with or without a hearing, as the Commission may determine, and with or without modification or condition, approves such application, or does not act on such application. Any action or order of the Commission approving, modifying, conditioning, or disapproving such application is subject to review by the court only under sections 706(2)(A), 706(2)(B), 706(2)(C), and 706(2)(D) of title 5 of the United States Code. An application may be initiated with the Commission prior to the date specified in paragraph (1) of this subsection.