609 F.2d 1274
 Fed. Sec. L. Rep. P 96,907, 5 Bankr.Ct.Dec. 751,
Bankr. L. Rep. P 67,148
 The VALLEY NATIONAL BANK OF ARIZONA, Plaintiff-Appellant,
v.
TRUSTEE FOR WESTGATE-CALIFORNIA CORPORATION, Defendant-Appellee.
Roy B. WOOLSEY, Plaintiff-Appellant,
v.
TRUSTEE FOR WESTGATE-CALIFORNIA CORPORATION, Defendant-Appellee.
C. NEIL & Elaine T. Ash, Plaintiff-Appellant,
v.
TRUSTEE FOR WESTGATE-CALIFORNIA CORPORATION, Defendant-Appellee.
 Nos. 77-3388, 78-1227 and 77-3662.
 United States Court of Appeals,
Ninth Circuit.
 May 30, 1979.
Rehearing and Rehearing En Banc Denied Aug. 6, 1979.
 
 Roy B. Woolsey, Newport Beach, Cal., C. Neil Ash, Beverly Hills, Cal., Dean Stern, Los Angeles, Cal., for plaintiff-appellant.
 Frank Rothman, Alan D. Croll, Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before CARTER and ANDERSON, Circuit Judges, and ROBERT M. TAKASUGI, District Judge.*
 JAMES M. CARTER, Circuit Judge:
 These consolidated appeals seek to negate the effects of a merger between Air California, Inc., and Westgate-Wacco, Inc., (hereafter Wacco). The former was a publicly-held corporation, 81% Of the stock of which was owned by the Westgate-California Corporation (hereafter Westgate), and the latter was a new, wholly-owned subsidiary of Westgate. The merger was sought by Curvin J. Trone, Jr. and Herbert Kunzel in their capacities as trustees in bankruptcy for Westgate, a holding company involved in reorganization proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq. The merger was approved by the Reorganization Court on October 12, 1977, and the same day, it was consummated. Westgate then owned 100% Of the surviving company, Wacco, which immediately changed its name to Air California. Shareholders of the old Air California Corporation were given certificates in Westgate on a one-for-one basis, which were redeemable at the option of the holder for $15 each. In sum, the effect was to turn Air California from a publicly-held corporation to one wholly owned by Westgate.
 Appellants here cite various errors allegedly made by the Reorganization Court below. The Valley National Bank of Arizona (hereafter Valley) held 78% Of the outstanding shares of Air California as security on a loan it made to Westgate. The essence of Valley's argument is that changing its collateral from shares in a publicly-held corporation to shares in a privately-held corporation constituted impairment of its security in violation of the Fifth Amendment to the U.S. Constitution because it was a "taking" without just compensation and without due process of law. Other alleged errors, dealing with sufficiency of the evidence and burden of proof, are ancillary to this central issue. Valley seeks to have the order granting the merger reversed so that its collateral can be fully restored. We find no reversible error and we therefore affirm the decision of the Reorganization Court as it applies to Valley.
 Woolsey disputes the sufficiency of the evidence to support findings of fact as to the fairness, justice and equity of the merger plan, and related findings. We find the evidence to be legally sufficient to support such findings and we affirm as to Woolsey.
 
 
 1
 The Ashes contend that the Information Statement which announced the proposed merger to Air California shareholders and which explained the reasons for and terms of the merger, inadequately disclosed certain information regarding conflicts of interest of persons involved, prior stated value of the Air California shares, and facts relating to promotional conditions attached to some of the shares which apparently decreased their value. These defects in disclosure, the Ashes argue, constituted violations of Section 14(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n. They also contend that the directors of Air California followed improper procedures when voting on the merger. As with Valley and Woolsey, we see no merit in the Ashes' contentions and we affirm the decision of the Reorganization Court as it applies to them as well.
 
 
 2
 The facts relevant to this appeal show that the trustees of Westgate filed with the Reorganization Court on November 30, 1976, an application to effect the merger between Wacco and Air California. Among other things, the application sought permission for the trustees to invest money to effect the merger, to pledge an appropriate portion of the stock of the surviving company to Valley as collateral on its loan, and to determine the fair value of Air California's publicly-held shares so that holders of those shares could be adequately protected in the event of the merger. The application was accompanied by a definitive "Information Statement in Conjunction with a Special Meeting of Shareholders of Air California to be held on December 21, 1976" (hereafter Information Statement) which, in some detail, announced the terms of the merger, its purposes, the parties involved, and other facts important to the shareholders.[1] The Information Statement also announced that the merger would be voted on at the December 21 meeting. The merger was approved by the shareholders at that meeting.[2] The Reorganization Court conducted evidentiary hearings on the proposed merger on January 14 and October 4, 1977. All parties to these appeals were present during those hearings and presented evidence in support of their respective positions.
 
 
 3
 After weighing the evidence and considering all the facts, the Reorganization Court ordered the merger approved on October 12, 1977. The order authorized the trustees to borrow and expend funds to implement the merger, directed them to consummate it as soon as practicable, and made other specific mandates. The Court also made findings of fact and conclusions of law. The merger was, in fact, completed the same day it was approved. All former public shareholders were issued Westgate certificates to replace their Air California shares. Many of them have since redeemed those certificates for cash. Of approximately 1,000 former public shareholders of Air California, only Woolsey and the Ashes continue as parties to litigation related to the merger or have otherwise submitted themselves to the jurisdiction of this court.
 
 
 4
 Neither Woolsey nor the Ashes sought a stay of the order approving the merger. Valley sought stays both informally before the order was granted and formally thereafter but its motions were denied by the Reorganization Court. No appeal from the denial of those motions was taken; rather, Valley sought a stay in this court. This was also denied. These appeals follow. For reasons stated more fully below, we find no merit to the appellants' arguments and we therefore affirm the judgment of the Reorganization Court.
 
 I. ISSUES RAISED
 
 5
 Although the three appellants allege a host of errors, we find it necessary to comment in detail on only the following:
 
 
 6
 A. As to Valley National Bank: Did the merger result in a reduction in the value of Valley's collateral so as to constitute a "taking" in violation of the Fifth Amendment to the Constitution?
 
 
 7
 B. As to Woolsey: Was there evidence to support the Reorganization Court's finding that the merger was fair, just and equitable as to the minority shareholders? Was the Reorganization Court's finding that three directors of Air California who were also trustees (Trone and Kunzel) or a director (James W. Leisner) of Westgate fulfilled their fiduciary obligations to the public shareholders of Air California supported by substantial evidence?
 
 
 8
 C. As to the Ashes: Was there adequate disclosure in the Information Statement?
 
 
 9
 D. Did consummation of the merger, coupled with inaction on the part of all three appellants, cause this appeal to become moot?
 
 II. DISCUSSION
 A. Valley National Bank
 
 10
 As noted above, the merger changed Air California from a publicly-held corporation to one privately held and wholly owned by Westgate. The collateral which Valley held for the loan it had given Air California had previously been Air California stock owned by Westgate but otherwise marketable to the public. The order granting the merger authorized the substitution of Wacco (now called Air California) stock for the old Air California stock. Because the new collateral could not be traded on the public market, Valley argued below and argues here that the value of its collateral was reduced and that this constituted a taking violative of the Fifth Amendment.
 
 
 11
 The Reorganization Court found that the value of Valley's collateral was not reduced by the merger; on the contrary, its value was actually increased so that Valley's loaned funds remained secure.[3] Valley disputes this finding, devoting major portions of its briefs to a summary of evidence allegedly in conflict with this finding. We have examined the evidence before the Reorganization Court, and while we note certain conflicts, we see no reason to conclude that the Court's finding here is clearly erroneous. Rule 52(a), Fed.R.Civ.P.; Thompson v. England, 226 F.2d 488 (9th Cir. 1955). We do not choose to disturb it.
 
 
 12
 Valley takes its argument one step further by claiming that regardless of whether the value of its collateral is reduced, the fact that the merger resulted in a change in its nature or character (from public to private shares) made that change a "taking" in violation of the Fifth Amendment, citing Security-First National Bank v. Rindge Land & Navigation Co., 85 F.2d 557 (9th Cir. 1936) and In re Los Angeles Lumber Products Co., 24 F.Supp. 501 (S.D.Cal.1936), Rev'd on other grounds sub nom. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). But in both of those cases, the critical defect in the alteration of the collateral was the reduction in its value rather than the mere change in its nature or character. In Security-First National Bank, this court found that the reduction of a complaining creditor's debt by 60% Violated bankruptcy law as well as the Fifth and Fourteenth Amendments. In Los Angeles Lumber Products, the district court condemned any attempt to scale down debts in a bankruptcy proceeding without the necessary approval of two-thirds of each class of creditors. Because, as noted in the preceding paragraph, there was no reduction in the value of the collateral Valley held, the constitutional defects of Security-First National Bank and Los Angeles Lumber Products are not present here, and we find no reason to go beyond those cases to fashion a rule that would require reversal of the Reorganization Court's decision.[4] There is no Fifth Amendment violation absent actual impairment of a creditor's security. Matter of Chicago, Rock Island and Pacific Railroad Co., 545 F.2d 1087 (7th Cir. 1976). We therefore affirm as to Valley National Bank.
 
 B. Woolsey
 
 13
 As a minority shareholder in the old Air California Corporation, Woolsey objected to his being required to relinquish his stock in that company as a result of the merger. It is his initial contention that the Reorganization Court's finding that the merger was fair, just and equitable was contrary to the evidence.[5] Specifically, he argues that the merger did not comply with certain California merger statutes and that the merger was inherently unfair.
 
 
 14
 As an initial proposition, we point out that, while the trustees had the burden of proving the merger fair, just and equitable to the satisfaction of the Reorganization Court, it is Woolsey's burden to show to this court that the finding is clearly erroneous. Rule 52(a), Fed.R.Civ.P. We are of the opinion that he has not met that burden.
 
 
 15
 The California merger statutes to which Woolsey refers are the former sections 4103 and 4107 of the Corporations Code and are quoted in full in the margin.[6] While there is some question as to whether this claimed error was properly preserved in the court below, there is enough ambiguity in the Record to allow us to assume that it was. Woolsey claims that the first paragraph of § 4103 was violated because the merger agreement did not give the "basis of converting the shares of the constituent corporations into shares or other securities" of the surviving corporation. Woolsey does not develop this argument, nor does he cite authority to support it. We find it sufficient to note that § 4103 did not require that the directors explain in the merger agreement the basis for the conversion of shares, but only that they approve such provisions. Furthermore, we have examined the Information Statement published in conjunction with the proposal for the merger and find that it adequately explained the conditions of the merger, including the basis for the potential conversion of Westgate certificates into Westgate stock.
 
 
 16
 Next Woolsey argues that the second paragraph of § 4103 was also violated because some shareholders of Air California became equity participants in the resulting corporation, while others were assured only of cash for their old Air California shares. In arguing that all the shareholders of a given class had to be treated equally in terms of the character of their distribution rights under a merger agreement, Woolsey is reading into § 4103 a requirement that simply did not exist. Neither can it be inferred from reading § 4103 in conjunction with § 4107, as Woolsey has attempted. Section 4107 merely required that any merger agreement whatever its terms be approved by two-thirds of the shareholders of each class of shares. No one contends that this was not done. Absent authority to the contrary, we conclude that it was not improper to guarantee certain shareholders equity participation in the surviving corporation and to guarantee others only fair financial compensation for their shares. See Giannini Controls Corp. v. Superior Court of Los Angeles Co., 240 Cal.App.2d 142, 49 Cal.Rptr. 643 (1966).
 
 
 17
 Woolsey alleges a further violation of § 4103 by claiming that Westgate was the surviving corporation and that it had no net worth at the time of the merger. He implies that this fact shows Westgate's liabilities exceeded its assets at the time of the merger, in violation of the second paragraph of § 4103. But it was Wacco not Westgate which survived Air California, and no one claims its liabilities exceeded its assets. We see no merit to this claimed error.
 
 
 18
 Next Woolsey contends that the merger plan was inherently unfair because it failed to guarantee him and other minority shareholders continuing equity participation in Air California. He cites no authority whatsoever in support of this argument. In view of the fact that the then-applicable California merger statutes (discussed Supra ) allowed distribution of cash in lieu of property or securities, there seems to be no support for this proposition.
 
 
 19
 We have examined Woolsey's other contentions regarding the fairness, justice and equity of the merger, and find they likewise have no merit. In large measure, they constitute attacks on the findings of the Reorganization Court. We have reviewed those findings and the evidence presented, and we conclude that the findings are supported by substantial evidence.
 
 
 20
 Woolsey's second major objection concerns the finding, quoted in footnote five in the margin, that the trustees of Westgate and the directors of Air California had fulfilled their fiduciary obligations in bringing about the merger. Although the specific acts constituting the alleged breaches are not explained clearly in the briefs, it appears that the harm alleged to have resulted therefrom includes depriving minority shareholders of continuing equity participation in Air California, and a depressed valuation of Air California stock at the time the merger was approved and carried out.[7]
 
 
 21
 There is no breach of fiduciary duty owed by a director or majority shareholder to a minority shareholder in the merger context where the action is taken in good faith and is inherently fair to the minority. It is the law in California that requirements of good faith and inherent fairness are met when (1) the merger transaction has independent legitimate business reasons and benefits the corporation, and (2) the minority shareholders are treated fairly and without disadvantage. Jones v. H. F. Ahmanson & Co., 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464 (1969). Accord, Fisher v. Pennsylvania Life Co., 69 Cal.App.3d 506, 138 Cal.Rptr. 181 (1977). See In re Security Finance Co., 49 Cal.2d 370, 317 P.2d 1 (1957).
 
 
 22
 With regard to the first requirement, we have examined the record and find that the business reasons given for the merger are supported by the evidence. The Reorganization Court was justified in finding that Air California would benefit from being relieved of the reporting requirements imposed on public corporations by federal securities law, that it would have greater access to equity capital after Westgate's reorganization, that potential conflicts of interest between Westgate and Air California would be eliminated, and that Air California could then make greater use of Westgate management skills in its operations. The Reorganization Court was likewise justified in finding that Westgate would benefit from the merger by making successful reorganization in the Chapter X proceedings more likely. Woolsey has advanced no persuasive reasons for disregarding these findings, and we therefore decline to do so.
 
 
 23
 Regarding the second requirement no disadvantage to minority shareholders our discussion of the fairness, justice and equity of the merger applies here as well. We state once again that we have found no statute or case which guarantees minority shareholders an equity participation in a merged corporation. We also note that witnesses for the trustees and witnesses otherwise adverse to the trustees all agreed that $15 was a fair price paid for the Westgate certificates as representing the value of the old Air California shares. Independent expert appraisers valued Air California shares at around $12.50 per share during this time period. In addition, those former Air California shareholders who wished to remain equity participants rather than cash out were allowed to retain their Westgate certificates and exchange them for Westgate stock if and when Westgate was reorganized. Finally, all minority shareholders had the option of exercising their appraisal rights. Having carefully considered the options available to minority shareholders, we are left with the impression that they were treated fairly and suffered no disadvantage in the merger.
 
 
 24
 To the extent Woolsey argues that the trustees and directors somehow conspired to reduce the value of Air California in order to spring the merger when the company's value was low and thus minimize their obligations to the minority shareholders, we reject that argument as being without any foundation in the Record. We will not consider such charges without their having first been considered by a trier of fact. We have also examined other issues raised by Woolsey and find no merit to them.
 
 C. The Ashes
 
 25
 The focus of the Ashes' appeal is on the Information Statement which announced the proposed merger. The Ashes claim that certain necessary information was not adequately disclosed, and that other necessary information was undisclosed, all in violation of section 14 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n.[8] Specifically, they claim that the Information Statement did not clearly reveal that the Westgate trustees Messrs. Trone and Kunzel were also directors of Air California and that because they were financially compensated for their work as trustees, their voting in the merger proposal as directors represented a potential conflict of interest which required exposure. The Ashes also claim that there was inadequate disclosure of the fact that Mr. Leisner was a director of both Air California and Westgate and could likewise be suspected of conflict of interest. They also point out (correctly) that six months before the merger announcement, the trustees had been authorized to sell Air California shares for $21, but that this fact was not disclosed in the Information Statement. Finally, they note that the Information Statement failed to disclose that large numbers of the Air California shares owned by Westgate were subject to promotional conditions which arguably reduced the value of all of the shares.
 
 
 26
 As to the Ashes' first claimed error inadequate disclosure of conflicting interests among the directors and trustees it should be noted that no one contends the information was undisclosed in the statement or that it was improper for the persons involved to occupy positions in both Westgate and Air California. The sole claim is that the information was "buried" in the information statement and thus did not give adequate notice of potential conflicts. We disagree.
 
 
 27
 The fact of the dual roles played by Messrs. Trone and Kunzel is revealed in three different places in the Information Statement. Mr. Leisner's positions are disclosed once. In all instances, the text is preceded by a headline in bold-faced type which alerts the reasonable reader to the nature of the disclosure to follow. The type in all instances is of the size and just as prominent as that used throughout the Information Statement. We think the information was adequately disclosed in terms of how it was presented in the Statement. See Kohn v. American Metal Climax, Inc., 458 F.2d 255 (3d Cir. 1972) (the "equal prominence" rule). Furthermore, the locations of the disclosures on pages 19, 27 and 28 of the Information Statement offer no compelling grounds for reversal. The Ashes may wish to have seen the potential conflicts appear in the Statement before the directors' endorsement of the merger, but they cite no authority which would require this textual organization. As it is, the disclosures are well toward the front of the Statement, though not as near the front as the endorsement. "(E)very fact cannot be contained in the beginning." Smallwood v. Pearl Brewing Co., 489 F.2d 579, 602 (3d Cir. 1974).
 
 
 28
 Next, the Ashes claim it was wrong not to disclose in the Statement the fact that up until six months before the merger proposal was announced, the trustees had authority to sell Air California shares at $21 each. This earlier asking price was determined under special circumstances largely irrelevant to this case, resulted in few if any shares being sold at that price, was terminated, as noted, six months before the merger was proposed, and was material only to the extent it affected the minority shareholders' decision to exercise their appraisal rights rather than retain the Westgate certificates or cash out. No one now claims that the $21 price in fact represented the value of Air California shares at the time of the merger. Furthermore, "Air California unilaterally extended renewed appraisal rights to all Air California shareholders after all relevant information (including this old $21 asking price) became known." Conclusion of Law VI, Record at p. 2601. In light of the foregoing we conclude that this claimed error has no merit.
 
 
 29
 For similar reasons, the Ashes' third claimed error failure to disclose promotional conditions attached to some of the Air California shares owned by Westgate must also be rejected. The Reorganization Court found that neither Air California nor the trustees of Westgate were aware of the relevance of the conditions until after the merger had been announced. It also found that whatever defects of disclosure resulted were cured by a Supplemental Notice published before the merger was consummated. It is also important to note that, in conjunction with the disclosure of the promotional conditions, Air California consented to increase the redemption amount from $13 to $15, apparently to avoid litigation on the significance of the effect of the promotional conditions on the value of the rest of the shares. We agree with the Reorganization Court that whatever inadequacies existed in the Information Statement as a result of the failure to disclose the promotional conditions were cured by subsequent disclosure and the increase in the redemption figure.
 
 
 30
 We have examined other related issues raised by the Ashes and find them to lack sufficient merit to warrant discussion or reversal.
 
 D. Mootness
 
 31
 To the extent all three appellants seek an equitable remedy in the form of a negation of the merger, there is an additional reason for finding against them; the remedy they seek is not available because of mootness. The merger took place on October 12, 1977. All Air California public shares were redeemed or exchanged for Westgate certificates. The vast majority of persons who were affected by that action are not subject to the jurisdiction of either this court or the Reorganization Court. Only Woolsey and the Ashes remain of the former shareholders. The merged company, Wacco/Air California, has been operating for over two years as a wholly-owned subsidiary of Westgate. All of these facts make it difficult, if not impossible, to fashion an equitable remedy that would restore appellants to their former positions. See Matter of Combined Metals Reduction Co., 557 F.2d 179 (9th Cir. 1977).
 
 
 32
 In addition, at least two of the three appellants Woolsey and the Ashes would not be entitled to equitable relief even if it were available. Neither of them sought any kind of stay of the order in which the Reorganization Court authorized the merger. This court stated in Matter of Combined Metals, supra :
 
 
 33
 "the practical necessities involved in a successful reorganization require that unless an order of the bankruptcy judge or the district judge is stayed pending appeal, the trustee's acts in accordance with the order should not thereafter be subject to reversal, even if the order is subsequently overturned on appeal."
 
 
 34
 557 F.2d at 189. See In re Abington Realty Corp., 530 F.2d 588 (4th Cir. 1976). This failure to obtain, or even seek, a stay effectively precludes Woolsey and the Ashes from the equitable remedy they ask for; absent a stay, it was entirely proper for the trustees to go ahead with the merger. The actions they took pursuant to that order should not be reversed.
 
 
 35
 The foregoing brief analysis may also apply to Valley. It did, in fact, seek a stay, but was refused by the Reorganization Court. It also sought a stay from this court, but was refused again. Significantly, no stay was sought from the Circuit Justice. Rule 51, Supreme Court Rules. The facts also show that Valley was quite relaxed in its attempts to block or delay the merger. Indeed, for a time, Valley actively supported the proposed merger. And even after it changed its position, it made no effort to seek a stay until shortly before the merger was consummated, even though it knew well in advance that the merger was being planned and pursued by the trustees. The cumulative impact of these facts suggests to us that Valley's position is not much better than that of Woolsey and the Ashes in terms of its claim to equitable relief.
 
 
 36
 Ordinarily, if the merger cannot be attacked because of mootness, the order on appeal would be dismissal, not affirmance of the judgment below. However, in the first portion of our opinion (Part II; A, B and C) we hold the judgment should be affirmed on the merits. Accordingly, we permit the first portion of our opinion to govern our order on appeal.
 
 
 37
 The judgment is AFFIRMED as to the three appellants.
 
 
 
 *
 Honorable Robert M. Takasugi, District Judge, Central District of California, sitting by designation
 
 
 [1]
 Allegedly important facts left out or deemphasized in the Information Statement will be discussed more fully below
 
 
 [2]
 The outcome was a foregone conclusion because Westgate held more than enough shares to vote for approval
 
 
 [3]
 The Reorganization Court found that ". . . notwithstanding the absence of a public market for Wacco stock, the economic value of the Wacco shares proposed to be pledged to Valley is at least equivalent to the value of the collateral heretofore held by Valley. By reason of the fact that none of the pledged Wacco shares will have promotional conditions affixed thereto, while a significant number of the Air California shares held by Valley do have such conditions . . . and by reason of the fact that as a consequence of the merger Air California will receive additional equity capital through the exercise of stock options, the Court finds that the value of the pledged Wacco shares is substantially in excess of the value of the pledged Air California shares. Furthermore and in any event, the value of the proposed collateral is substantially in excess of the maximum amount of Valley's claim." Finding of Fact X, Record on Appeal at pp. 2594-95
 
 
 [4]
 Valley's contention that the rules regarding burden of proof in the so-called "turnover" cases (See, e.g., In re Penn Central Transportation Co., 494 F.2d 270 (3d Cir.), Cert. denied, 419 U.S. 883, 95 S.Ct. 147, 42 L.Ed.2d 122 (1974); In re Third Avenue Transit Corp., 198 F.2d 703 (2d Cir. 1952) ) should apply is likewise unavailing. First, there has been no turnover to the debtor of assets held by the creditor as security; i. e., this is simply not a turnover case. Second, the factors which require that the debtor seeking to have assets serving as security for a loan returned to it should bear a high burden of proving the necessity of such a measure are not present here. A turnover of assets to a debtor appears to be the most drastic remedy allowed under Chapter X of the Bankruptcy Act. It is therefore proper that a party seeking such a remedy should have to meet a high burden of proof before it is allowed. Where, as here, the creditor's collateral is not as severely impaired indeed, as noted above, it was not impaired at all and the creditor's control over it is undiminished, it should not be necessary to impose such a burden. Without exploring all of Valley's arguments in favor of applying the turnover rules, or all of the trustees' arguments which show that it would be improper to do so, and that in any event they satisfied the rules, we find them to be inapplicable in this situation
 
 
 [5]
 The finding to which Woolsey objects reads as follows:
 "The Court also finds that implementation of the merger is fair, just and equitable to, and in the best interests of, Air California and its public shareholders, and that Westgate, the Trustees and Mr. James Leisner (who is both a Westgate and Air California director) have satisfied their fiduciary obligations to such shareholders."
 Finding of Fact V, Record on Appeal at p. 2589.
 
 
 [6]
 The merger statutes to which Woolsey refers are the former sections 4103 and 4107 of the California Corporations Code. They were repealed by Stats.1975, c. 682, p. 1514, § 6, eff. Jan. 1, 1977. Section 4103 (Stats.1947, c. 1038, p. 2376, § 4103, As amended Stats.1951, c. 1377, p. 3296, § 8 And Stats.1970, c. 671, p. 1302, § 4, operative Jan. 1, 1971) reads as follows:
 " § 4103. Directors' approval of agreement for merger or consolidation; contents of agreement
 "The board of directors of each corporation seeking to merge or consolidate shall, by resolution, approve the terms and conditions of the proposed agreement and the mode of carrying them into effect, as well as the manner and basis of converting the shares of the constituent corporations into shares or other securities of the consolidated or surviving corporation or of a holding corporation of any of the constituent corporations.
 "The agreement may provide for the distribution of cash, property, or securities, in whole or in part, in lieu of shares, to shareholders of the constituent corporations or any class of them; but upon such distribution of cash, property, or securities, the liabilities of the consolidated or surviving corporation, including those derived by it from the constituent corporations, plus the amount of the stated capital of the consolidated or surviving corporation, shall not exceed the value of the assets of the consolidated or surviving corporation."
 Section 4107 (Stats.1947, c. 1038, p. 2377, § 4107, As amended . . .) reads in pertinent part as follows:
 " § 4107. Approval of shareholders; required vote; meeting; notice; statement of terms of agreement
 The agreement shall be approved by the vote * * * of the holders of not less than two-thirds of the issued and outstanding shares of each class, regardless of limitations or restrictions on the voting power thereof, of each corporation . . . ."
 It is conceded by all parties to this appeal that these sections of the code were applicable at the time the merger was approved.
 
 
 [7]
 As noted earlier, Air California stock was exchanged for so-called Westgate certificates which could be redeemed for $15 each or held and exchanged for Westgate stock upon reorganization of that company. All evidence, including testimony of adverse witnesses, presented to the Reorganization Court pointed to the fact that Air California had a value of less than $15, a fact which Woolsey does not seriously dispute. His contention seems to be that certain acts by the trustees and directors of Westgate and Air California caused Air California to loose value prior to the merger
 
 
 [8]
 Regulations promulgated pursuant to Section 14(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(c), require the publication and distribution of an information statement announcing and explaining the merger proposal to all shareholders eligible to vote. 17 C.F.R. § 240.14c. Under those regulations, "(n)o information statement shall contain any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the same meeting or subject matter which has become false or misleading." 17 C.F.R. § 240.14c-6