985 F.2d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re HAMILTON TAFT & COMPANY, a California Corporation, Debtor,
HAMILTON TAFT & COMPANY, a California Corporation, Debtor-Appellant,
v.
FEDERAL EXPRESS; Stanford University; Stanford University
Hospital; Frederick S. Wyle, Trustee for Hamilton
Trust & Company, Creditors-Appellees.
 No. 92-15689.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 5, 1992.*
Decided Jan. 25, 1993.
 
 Appeal from the United States District Court for the Northern District of California; D.C. No. CV-91-03518-JPV, B.C. No. 91-3-1077-LK, John P. Vukasin, Jr., District Judge, Presiding.
 N.D.Cal.
 AFFIRMED.
 Before TANG, PREGERSON and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Involuntary Chapter 11 Debtor-Appellant Hamilton Taft & Company (Hamilton) appeals from the district court's order dismissing its appeals of four separate bankruptcy court orders. Hamilton appealed from an order authorizing appointment of a trustee, an order appointing Frederick S. Wyle as its Trustee, an order closing down its business, and an order for relief. The district court dismissed the appeals as moot due to the unavailability of effective relief and lack of equity caused by Hamilton's failure to obtain a stay. Hamilton contends the district court erred because Hamilton has an effective remedy in its right to seek damages and disgorgement of fees from its creditors for wrongfully placing it in bankruptcy. Hamilton also contends the bankruptcy court erred in appointing a trustee, authorizing the shutdown of its business, and granting relief.
 
 I.
 
 3
 Hamilton was a payroll service company that annually transmitted between $3 billion to $4 billion of payroll tax payments to tax authorities for over 250 clients. Appellees Federal Express, Stanford University Hospital, and Stanford University Board of Trustees, along with other creditors, entered into separate tax service agreements with Hamilton. The appellees periodically transferred payroll taxes to Hamilton for remission to the appropriate taxing authorities. Hamilton generally received no fees for providing this service; instead, under Hamilton's written service agreement, clients compensated Hamilton by allowing it to take advantage of the "float"--the time value of money in Hamilton's possession before transfer to the taxing authorities.
 
 
 4
 In March, 1991, appellees discovered that at least $34 million they had sent to Hamilton was not forwarded timely to the taxing agencies and that substantial tax penalties were owed.
 
 
 5
 Appellees filed an involuntary bankruptcy petition against Hamilton on March 20, 1991. Appellees also filed a motion to appoint a trustee. On March 26, 1991, the bankruptcy judge entered an order appointing a trustee and an order specifically appointing Appellee Frederick S. Wyle as Trustee. On May 17, 1991, the bankruptcy court authorized the Trustee to close down Hamilton's business. On May 28, 1991, the Trustee filed his First Interim Report, describing the preliminary results of his investigation into Hamilton's affairs.
 
 
 6
 The Trustee concluded that $55.2 million, net of repayments, had been transferred from Hamilton to entities controlled by Hamilton's president, Connie C. Armstrong, Jr., during the two-year period Armstrong owned Hamilton. The Trustee found the money had been used for a combination of 1) speculative ventures and investments in Texas, many of which were defunct and none of which had produced any profit, 2) funding the operations of the Armstrong companies, and 3) personal luxuries for Armstrong, including a "hobby" cattle ranch, costing an estimated $10 million. According to the Trustee, Hamilton owed at least $90.9 million in unpaid taxes to its clients, resulting principally from Armstrong's diversion of payroll tax deposits. Hamilton had $5.8 million available to meet these liabilities.
 
 
 7
 On May 31, 1991, on a motion for summary judgment by the appellees, the bankruptcy court issued an order of relief.
 
 
 8
 Subsequently, four other companies controlled by Armstrong (Texas Debtors) filed bankruptcy in Texas.
 
 
 9
 Because Hamilton did not seek a stay, the Trustee took control of the business. Between the time of the issuance of the bankruptcy court's orders and the district court's hearing of Hamilton's appeal, the Trustee:
 
 
 10
 1) shut down Hamilton's business;
 
 
 11
 2) filed an adversary proceeding in the Hamilton bankruptcy case against Armstrong and every entity controlled by him of which the Trustee had knowledge, seeking recovery of assets fraudulently conveyed from Hamilton Taft, Frederick S. Wyle v. Connie C. Armstrong, Jr., et al., Adv.Proc. No. 91-3-081-LK;
 
 
 12
 3) filed a motion for change of venue in order to transfer the Chapter 11 cases of the four Texas Debtors to San Francisco. The bankruptcy court granted the motion. Subsequently, the four Texas Debtors stipulated that their cases would be jointly administered with the Hamilton case;
 
 
 13
 4) sought and won the substantive consolidation of the Texas Debtors and Hamilton. None of the debtors, including Hamilton, opposed the substantive consolidation or the appointment of the Trustee as Trustee of the consolidated estate;
 
 
 14
 5) was granted authorization to sell, among other numerous sale transactions, several town houses, Hamilton's office equipment and furniture, luxury vehicles, cattle, horses, and other personal property. The Trustee also took title to Armstrong's cattle ranch.
 
 
 15
 The district court found that as a result of substantive consolidation and other actions, the assets of the Texas Debtors are now under the control of the Trustee.
 
 
 16
 Since the Trustee was appointed, court orders have been issued by the bankruptcy court authorizing or approving the Trustee's transactions as Trustee of Hamilton and the Texas Debtors. These orders cover a variety of activities, including sales of assets, contracts with third parties, abandonment of assets, employment of professionals and other consultants, and the operations of Hamilton and the Texas Debtors.
 
 
 17
 The district court held Hamilton's appeals moot on two separate and independent grounds. First, the district court held that the actions taken by the Trustee had created a substantial change in circumstances that made it impossible for the district court to fashion relief. Second, the district court held that by failing to seek a stay and permitting the substantial changes in circumstances to occur, Hamilton had allowed the appeals to become moot for lack of equity. Hamilton timely filed a notice of appeal to this court. We review the district court's determination of mootness de novo. Williams v. United States Gen. Services Admin., 905 F.2d 308, 310 (9th Cir.1990).
 
 II.
 
 18
 Hamilton argues the district court erred in dismissing its appeals as moot because the court could have granted effective and equitable relief by returning control of the business to Hamilton, discharging the wrongfully appointed Trustee, and dismissing the bankruptcy petition. These actions would have cleared the way for a damage suit against appellees under 11 U.S.C. § 303(i) (authorizing recovery for wrongful bankruptcy filing). Hamilton admits it never sought a stay, but argues the appeals are not moot because a stay was unnecessary to preserve Hamilton's rights.
 
 
 19
 We cannot agree. Although Hamilton partially grounds its argument against mootness on its plan to sue appellees for damages at some later time, before this court it seeks removal of the trustee and dismissal of the petition for involuntary bankruptcy. These are equitable remedies. Equitable remedies in bankruptcy proceedings are unavailable to appellants who fail to seek a stay of the bankruptcy court's objectionable orders, permitting a comprehensive change of circumstances to occur. Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.), 652 F.2d 793, 798 (9th Cir.1981).
 
 
 20
 In bankruptcy cases, an appeal may become moot in one of two ways. First, events may occur that make it impossible for the appellate court to fashion effective relief. Bennett v. Gemmill (In re Combined Metals Reduction Co.), 557 F.2d 179, 187 (9th Cir.1977). Thus, when a trustee has already sold assets to third parties, a court may be powerless "to undo what has already been done." Id. No live controversy exists, and the court is "depriv[ed] ... of its constitutional jurisdiction over the matter." In re Texaco, 92 B.R. 38, 45 (S.D.N.Y.1988).
 
 
 21
 Second, an appeal may become moot when failure to obtain "a stay of the objectionable orders of the Bankruptcy Court [has] permitted such a comprehensive change of circumstances to occur as to render it inequitable ... to consider the merits of the appeal." In re Roberts Farms, Inc., 652 F.2d at 798. When, for example, an appellant fails to seek a stay of the order confirming the plan of reorganization and allows the trustee to conduct a series of complex transactions involving the estate, a court may dismiss the appeal for "lack of equity." Id. at 797, 798. This rule developed in part from "the particular need for finality in orders regarding stays in bankruptcy." Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1424 (9th Cir.1985); see Estate of Richards v. Onouli-Kona Land Co. (In re Onouli-Kona Land Co.), 846 F.2d 1170, 1172 (9th Cir.1988) ("Finality in bankruptcy has become the dominant rationale for our [mootness] decisions....").
 
 
 22
 Thus, Hamilton's arguments, which focus almost entirely on the feasibility of effective relief, are largely beside the point. The district court held not only that it could not fashion relief, but that it would not. The court concluded that the comprehensive change of circumstances permitted by Hamilton's failure to seek a stay made judicial action inequitable. Valley Nat. Bank of Ariz. v. Trustee, 609 F.2d 1274, 1283 (9th Cir.1979), cert. denied, 444 U.S. 1015 (1980), is "the touchstone precedent for this principle." In re Roberts Farms, Inc., 652 F.2d at 798. In Valley National, appellants, minority shareholders and the debtor, challenged a merger sought by the trustees under Chapter X of the Bankruptcy Act. The minority shareholders never sought a stay and the merger took place. After holding that fashioning an equitable remedy would be nearly impossible, the court also held that the minority shareholders
 
 
 23
 would not be entitled to equitable relief even if it were available. Neither of them sought any kind of stay of the order.... This court stated in Matter of Combined Metals [Reduction Co., 557 F.2d 179 (9th Cir.1977) ]: "the practical necessities involved in a successful reorganization require that unless an order of the bankruptcy judge or the district judge is stayed pending appeal, the trustee's acts in accordance with the order should not thereafter be subject to reversal, even if the order is subsequently overturned on appeal." [Id. ] at 189. This failure to obtain, or even seek, a stay effectively precludes [appellants] from the equitable remedy they ask for; absent a stay, it was entirely proper for the trustees to go ahead with the merger. The actions they took pursuant to that order should not be reversed.
 
 
 24
 Valley Nat. Bank of Ariz, 609 F.2d at 1283 (emphasis added) (citation omitted). Hamilton seems to address the rule of Valley National only by urging that equity strongly favors appellate consideration of the issues it raises because, if Hamilton is right, "equity cries out" that it should have an opportunity to seek recompense. This argument is unpersuasive, given the facts of the case. Not only has Hamilton lost its claim to an equitable remedy by failing to seek a stay, but the maxim "he who comes into equity must come with clean hands" applies here with particular force. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3